STEVEN T. GUBNER – NV Bar No. 4624
SUSAN K. SEFLIN – CA Bar No. 213865 – Admitted *Pro Hac Vice*
JESSICA S. WELLINGTON – CA Bar No. 324477 – Admitted *Pro Hac Vice*
BG LAW LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone:  (702) 835-0800
Facsimile:   (866) 995-0215
Email:       sgubner@bg.law
             sseflin@bg.law
             jwellington@bg.law

Attorneys for Chapter 11 Debtor
and Plan Proponent

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.  22-11824-abl |
| Front Sight Management LLC, | Chapter 11 |
| Debtor. | **Plan Objection Deadline: 10:00 p.m. PDT on November 4, 2022** |
| | **Ballot Deadline:  10:00 p.m. PDT on November 4, 2022** |
| | **Plan Confirmation Hearing:** |
| | **Hearing Date:** November 18, 2022 |
| | **Hearting Time:** 9:30 a.m. |

## DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION

# <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

I.    INTRODUCTION .................................................................................................1

II.    DEFINITIONS AND EXHIBITS ........................................................................6

    A.    Definitions...............................................................................................6

    B.    Exhibits. ................................................................................................16

    C.    Computing Time Periods. ....................................................................16

    D.    Notices and Delivery of Documents. ...................................................16

III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THIS PLAN ......................................................................................................17

    A.    What Creditors and Interest Holders Will Receive Under this Plan.....................17

    B.    Unclassified Claims. ............................................................................17

        1.    Administrative Claims. ............................................................17

        2.    Priority Tax Claims.................................................................20

    C.    Classified Claims and Interests. ..........................................................21

        1.    Class of Secured Claims. ........................................................21

        2.    Classes of Priority Unsecured Claims.....................................23

        3.    Classes of General Unsecured Claims. ...................................24

        4.    Classes of Interest Holders.....................................................24

    D.    Means of Effectuating this Plan and Implementation of this Plan.........................25

        1.    Plan Funding. ..........................................................................25

        2.    Release of Liens. .....................................................................25

        3.    Composition of the Reorganized debtor and Post-Confirmation Management.............................................................................26

        4.    Disbursing Agent. ...................................................................26

        5.    Objections to Claims...............................................................27

        6.    Payment Upon Resolution of Disputed Claims. .....................28

        7.    Investigation and Prosecution of Claims and Avoidance Actions.............29

2836572

| | | 8. | Payment of Professional Fees and Expenses Incurred After the Effective Date. .....................30 |
|---|---|---|---|
| | | 9. | Distributions to Be Made Pursuant to the Plan. ..........................30 |
| | | 10. | Corporate Matters. ...........................................31 |
| | | 11. | Exemption from Transfer Taxes. .............................31 |
| | | 12. | Exculpations and Releases. ..................................32 |
| | E. | | Other Provisions of this Plan. ................................32 |
| | | 1. | Treatment of Prepetition Lifetime Memberships...............32 |
| | | 2. | Executory Contracts and Unexpired Leases. ..................33 |
| | | 3. | Risk Factors. ...............................................35 |
| | | 4. | Changes in Rates Subject to Regulatory Commission Approval...............36 |
| | F. | | Retention of Jurisdiction. ...................................36 |
| | G. | | Amendments to Operating Agreement. .........................37 |
| | H. | | Dissolution of the Committee. ................................37 |
| | I. | | Miscellaneous Issues Regarding Plan Distribution................38 |
| | | 1. | No Fractional Distributions....................................38 |
| | | 2. | Name and Address of Holder of Claim.........................38 |
| | | 3. | Unclaimed Distribution. ......................................38 |
| | | 4. | De Minimus Cash Distributions. ..............................38 |
| IV. | | | AUCTION AND OVERBIDDING ...................................39 |
| V. | | | EFFECT OF CONFIRMATION OF THIS PLAN ........................43 |
| | A. | | Discharge. ..................................................43 |
| | B. | | Continuing Stay/Injunction...................................44 |
| | C. | | Revesting of Property in the Reorganized Debtor. ...............45 |
| | D. | | Modification of the Plan. .....................................45 |
| | E. | | Post-Confirmation Status Reports..............................46 |
| | F. | | Post-Confirmation Conversion/Dismissal. .......................46 |
| | G. | | Final Decree. ...............................................47 |

2836572

**Front Sight Management LLC (the "Debtor") is the proponent of this amended chapter 11 plan of reorganization. The Debtor reserves the right to make further amendments and modifications.

**THE DEBTOR HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT. THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATION CONCERNING THE DEBTOR, THE VALUE OF ITS PROPERTY OR THE TREATMENT OF CLAIMS OTHER THAN AS SET FORTH IN THE ACCOMPANYING DISCLOSURE STATEMENT.**

# I.    INTRODUCTION

Front Sight Management LLC (the "Debtor" or "Front Sight") is the chapter 11 debtor in possession in the above-captioned chapter 11 bankruptcy case.  On May 24, 2022, the Debtor commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  This case is pending before the Honorable August B. Landis, Chief United States Bankruptcy Judge for the District of Nevada (the "Court" or "Bankruptcy Court").  This document is the Debtor's second amended chapter 11 plan (as may be further amended or modified, the "Plan").  Concurrently with the filing of this Plan, the Debtor filed its second amended disclosure statement (as may be amended or modified, the "Disclosure Statement").  Please be advised that the Plan should be read in conjunction with the Disclosure Statement, and that there are disclosures and information provided in the Disclosure Statement that are not included in the Plan.

The effective date ("Effective Date") of the plan will be the second business day after entry of the order confirming the Plan (the "Confirmation Order"), provided the Bankruptcy Court has waived the provisions of Rule 3020(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and no stay of the Confirmation Order is in effect.[1]  The Debtor following the Effective Date is referred to herein as the "Reorganized Debtor."

This Plan is a reorganizing plan.  The Plan provides for the Debtor's emergence from its chapter 11 bankruptcy as the "Reorganized Debtor", which the Debtor anticipates will occur in November 2022.  Under the Plan, the Debtor will satisfy its debt and other claims as set forth in Article III below and implement a recapitalization with approximately $24.775 million of new capital.  The Plan described below has been designed to position the Reorganized Debtor to succeed following bankruptcy.

After confirmation of the Plan, the Reorganized Debtor will continue operating its business

---

[1] If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the Effective Date will be the second business day which is at least fifteen (15) days following the date of entry of the Confirmation Order, assuming there has been no appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the second business day after the stay is no longer in effect with respect to the Confirmation Order.

2836572

as a world class firearms training center located in Nye County, Nevada.  Through its chapter 11 reorganization and the Plan, the Debtor is terminating all of its existing memberships and offering new memberships as set forth in more detail in **Exhibit B** hereto.  Please be advised that any parties to existing memberships that wish to vote on the Plan must file a proof of claim first, as set forth in Section III.E of this Plan.

The following is a summary of this Plan:

1.    <u>Recapitalization:</u>  The Plan provides for a recapitalization as follow: in exchange for 100% of the new equity interests to be issued on the Effective Date, Nevada PF, LLC (the "New Equity Investor"), an affiliate of the Debtor's post-petition lender FS DIP, LLC ("FS DIP"),  or a designee of Nevada PF will  (a) contribute $19.575 million in cash to fund the Plan, and (b) cause FS DIP's approximately $5.2 million secured claim to be contributed to the estate as partial consideration for the new equity interests, for total consideration of at least $24.775 million (the "New Value Contribution"). [2]  Under the Plan, the Debtor will satisfy its debt and other claims as set forth in Article III below.   The $19.575 million cash contribution ("Cash Contribution") will be used to, among other things, fund certain Plan payments on or around the Effective Date, provide reserves for certain disputed claims and provide the Reorganized Debtor with sufficient working capital.

2.    The Plan segregates Claims[3] into Classes and treats them as summarized immediately below, which summaries are subject to the provisions specified in Article III below.

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| N/A | Administrative Claims (Professional Fees) | Approximately $500,000[4] | Full payment, subject to Bankruptcy Court approval as may be required, except as otherwise agreed by such |

---

[2] The New Equity Investor will cause FS DIP's secured claim to be contributed in the amount of the DIP Financing (inclusive of all interest and fees) as of the Effective Date, which may affect the total amount of the New Equity Investor's New Value Contribution.

[3] Any capitalized term not yet defined will be defined in Article II of this Plan.

[4] This amount does not include the $2 million carve-out for professionals provided for in the Final DIP Order or approximately $700,000 from the Debtor's DIP Financing budget that is allocated to pay professional fees.  Currently there is a discrepancy between the projected/estimated amount of Professional Fee Claims and the amount available under the Plan for Professional Fee Plans which will have to be resolved prior to Plan Confirmation.

2

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | | | Professionals. <br><br> To the extent there is any surplus, such surplus shall be paid to the Class 6 reserve account. |
| N/A | Administrative Claims (Incurred in the Ordinary Course of Business) | Estimated at $75,000 to $500,000 | Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtor in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. |
| N/A | Priority Tax Claims | $100,000 | If there are any Allowed Priority Tax Claims on the Effective Date, full payment consistent with Bankruptcy Code section 1129(a)(9)(C). |
| N/A | The secured claim of post-petition lender FS DIP LLC ("FS DIP") <br><br> Collateral Description: 1st Priority Lien on substantially all assets of the Debtor[as set forth in ECF No. 288]. | Approximately $5.2 million | The FS DIP Secured Claim will be paid in full on the Effective Date or contributed to the estate as part of the New Value Contribution as further provided in, or contemplated by, the Plan, Disclosure Statement and otherwise applicable DIP loan documents. |
| 1 | Secured claim of Las Vegas Development Fund, LLC ("LVDF") <br><br> Collateral Description: Real property located at 1 Front Sight Road, Pahrump, NV 89061 ("Front Sight Property") <br><br> Interest rate: Non-Default – 6% <br><br> Maturity Date – October 4, 2021 <br><br> *Debtor has a pending action against LVDF and affiliates | Filed Claim: $11,655,706.01 with interest, costs and attorneys' fees accruing. [Pursuant to Proof of Claim No. 284-1] <br><br> Debtor's Estimate of Claim for Plan Treatment Purposes: $6.7 million [Calculated at $6,375,000 plus unpaid non default interest with no attorneys' fees, penalties or default interest]. The Debtor filed its objection to LVDF's claim on September 29, 2022 [ECF No. 393] | The Debtor filed an objection to Proof of Claim No. 284-1 filed by LVDF [ECF No. 393]. The hearing on the Debtor's objection is scheduled at the same date and time as the Confirmation Hearing. This claim is Contingent and Disputed. <br><br> **Treatment:** <br><br> Pending resolution of the Debtor's objection to LVDF's claim and the Debtor's affirmative claims against LVDF and prior to the Effective Date, $11,805,706.01 of the Cash Contribution shall be placed into a reserve account maintained by Stretto for LVDF's allowed claim. If LVDF's allowed claim is less than the reserve amount, any surplus shall revert to the Reorganized Debtor. <br><br> Until resolution of LVDF's disputed claim, and commencing January 2023, monthly interest shall accrue at the non-default rate of 6% set forth in the |

3

2836572

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | | | underlying loan documents on an estimated claim amount of $6.7 million. |
| | | | Upon resolution of the Debtor's objection to LVDF's claim and its affirmative claims against LVDF, LVDF shall be paid the balance of its allowed secured claim, if any, in full within five (5) business days of a final order allowing such claim. |
| | | | **Lien:** To the same extent and validity of its existing lien, LVDF shall have a first priority lien against the $11,805,706.01 in the reserve account until any allowed claim is paid from the reserve. |
| | | | **Collateral:** LVDF's collateral shall solely be the $11,805,706.01 in the reserve account. |
| | | | **EB5 Related Obligations:** The Reorganized Debtor shall have no EB5 Related Obligations. |
| | | | Such treatment shall be in full and complete satisfaction of the Class 1 claim.  The Debtor shall have no other obligations under the requisite loan agreements or deed of trust. |
| | | | **Impaired; Entitled to Vote subject to the Court's order approving the Disclosure Statement.** |
| 2 | Secured claim of Michael Meacher dba Bankgroup Financial Services ("Meacher")<br><br>Collateral Description: Certain of the Debtor's firearms<br><br>Value of Collateral: Approximately $214,569 book value of collateral set forth in the Bankgroup UCC financing statement filed March 22, 2021. | Filed Claim: $3.3 million secured claim [Proof of Claim No. 235-1]<br><br>Former insider. | This claim is Contingent and Disputed. The Debtor intends to file a complaint seeking avoidance of this purported lien, which includes an objection to this claim and a fraudulent transfer claim.<br><br>**Treatment:**<br><br>Pending resolution of the Debtor's complaint against Meacher and prior to the Effective Date, $3.3 million of the Cash Contribution shall be placed into a reserve account maintained by Stretto for purposes of satisfying any allowed claim held by Meacher (again, if any).  If any  allowed claim is less than the reserve amount of $3.3 million, any surplus shall revert to the Reorganized Debtor.<br><br>Upon resolution of the aforementioned complaint, if the Class 2 claimant has an allowed secured claim, such claim shall be paid in full.  **Lien:** To the same extent |

2836572

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | | | and validity of its existing lien against the Debtor's guns, if any, Meacher shall have a first priority lien against the $3.3 million in the reserve account until any allowed claim is paid from the reserve. I.e., Meacher will have a lien in the Cash in the reserve account equal to the fair market value of the Debtor's guns. To the extent that Meacher has a lien against guns owned by Ignatius Piazza, such lien shall not be affected by the Plan. **Collateral:** The $3.3 million in the reserve account but only to the same extent and validity of Meacher's interest in the Debtor's guns (again, if any). **Impaired; Entitled to Vote** |
| 3 | M2 EPC Mechanics Lien | $110,000 secured claim as of the Petition Date. | The Class 3 claim will be paid in monthly installments of $10,000 commencing February 1, 2023 until paid in full. Payment start date – February 1, 2023 Payment end date – December 1, 2023 **Impaired; Entitled to Vote** |
| 4 | Top Rank Builders / Morales Construction Mechanics Lien | $15,000 secured claim as of the Petition Date. | The Class 4 claim will be paid in three monthly installments of $5,000. Payment start date – February 1, 2023 Payment end date – April 1, 2023 **Impaired; Entitled to Vote** |
| 5 | Employee Wage Claim | $8,758.99 | Paid in full within 10 business days of the Effective Date. **Not Impaired; Not Entitled to Vote** |
| 6 | General Unsecured Claims | Estimated at approximately $10 million to $30 million. (This number is subject to change as follows: (a) the resolution of objections to Disputed Claims; and (b) the amount of rejection damages claims asserted by members.) [This estimation does not include any insider claims as the Debtor's insiders have agreed to subordinate all of their claims to | The Debtor disputes the validity of many of the claims asserted by members and intends on objecting to such claims. **Treatment:** Prior to the Effective Date, $3 million of the Cash Contribution shall be placed into a reserve account maintained by Stretto for allowed general unsecured claims. Any fees relating to objections to Class 6 claims after the Effective Date will be paid from this reserve. |

5

2836572

| Class No. | Description | Estimated Amount or Value of Claims as of the Effective Date | Estimated Projected Payment / Treatment for Allowed Claims |
|---|---|---|---|
| | | those of General Unsecured Creditors and have agreed that their claims will not receive any distribution(s) under, and will be permanently discharged by the Confirmation Order.] | Upon resolution of all objections to claims, holders of Class 6 allowed claims shall receive their pro rata share of the reserve amount.<br><br>**Impaired; Entitled to Vote** |
| 7 | Equity Interests of Ignatius Piazza (1% Voting), VNV Dynasty Trust – FS I (49.5% Non-Voting) and VNV Dynasty Trust – FS II (49.5% Non-Voting) | The Debtor's current equity holders who collectively own 100% of the Debtor. | <u>Treatment</u>: Current equity holders will not retain any equity under the Plan.<br><br>**Impaired. Presumed not to accept the Plan.** |

## II.    DEFINITIONS AND EXHIBITS

**A.    Definitions.**

For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article II.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning(s) ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules, in that order or priority.  Throughout this Plan, the use of the masculine, feminine, neuter, plural or singular shall be understood to include each of the others as the context may reasonably dictate.  As used in this Plan, the following definitions shall apply:

1.    **Administrative Claim.**  A Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory, accounting and other services, and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

2.    **Administrative Claims Bar Date.**  The date which is thirty (30) days after the Effective Date.

3.    **Allowed Administrative Claim.**  An Administrative Claim which is an Allowed Claim.

6

**4.** **Allowed Claim.**  A Claim against the Debtor and/or the Estate as to which no objection has been filed, or if an objection has been filed, has either been overruled or otherwise resolved by the allowance of such Claim by the Bankruptcy Court, if the Claim was: (1) scheduled in the list of creditors prepared and filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent or unliquidated as to amount; or (2) the subject of a timely filed proof of claim; or (3) which has been allowed by order of the Bankruptcy Court.

**5.** **Allowed Priority Claim.**  A Priority Claim which is an Allowed Claim.

**6.** **Allowed Priority Tax Claim.**  A Priority Tax Claim which is an Allowed Claim.

**7.** **Allowed Professional Fees.**  The amount of fees and costs incurred by Professionals engaged by the Debtor or the Committee in connection with the Case which are (1) timely requested by application filed on or prior to the Administrative Claims Bar Date; and (2) which are allowed by order of the Bankruptcy Court.

**8.** **Allowed Secured Claim.**  A Secured Claim which is an Allowed Claim.

**9.** **Allowed General Unsecured Claim.**  A General Unsecured Claim which is an Allowed Claim.

**10.** **Assets.**  All tangible and intangible assets of every kind and nature of the Debtor and its Estate, and all proceeds thereof, wherever located, as of the Effective Date.

**11.** **Avoidance Actions.**  Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

**12.** **Ballot.**  The form of ballot or ballots that will be distributed electronically with the Disclosure Statement to holders of Claims entitled to vote under the Plan in connection with the solicitation of votes to accept or to reject the Plan.

**13.** **Bankruptcy Code.**  Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*), as now in effect or hereafter amended.  All citations in the Disclosure Statement or in the Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

7

2836572

**14.**    **Bankruptcy Court.**  The United States Bankruptcy Court for the District of Nevada, or such other federal court with competent jurisdiction over the Case.

**15.**    **Bankruptcy Rules.**  Federal Rules of Bankruptcy Procedure, as now in effect or hereafter amended.

**16.**    **Bar Date.**  August 8, 2022, for non-governmental creditors; and October 8, 2022, for governmental units.

**17.**    **Business Day.**  Any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

**18.**    **Case.**  This Chapter 11 bankruptcy case, filed by the Debtor, pending in the Bankruptcy Court as Case No. 22-11824-abl.

**19.**    **Cash.**  Currency, checks, negotiable instruments and wire transfers of immediately available funds.

**20.**    **Cash Contribution.**  The $19.575 million in Cash contributed by the New Equity Investor under its New Value Contribution.

**21.**    **Causes of Action.**  Any and all causes of action, Avoidance Actions, suits, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment of any amounts owing to the Debtor or the Estate for any reason whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtor and/or Estate may hold against any Person but excluding those Persons who are released or exculpated, or against whom claims were waived, pursuant to the Plan.

**22.**    **Claim.**  Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, against the Debtor and/or the Estate, and any right to any legal or equitable remedy for breach of any obligation giving rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed,

8

2836572

contingent, matured, unmatured, disputed, undisputed, secured or unsecured, against the Debtor and/or the Estate.

23.     **Claimant.**  A Person who holds a Claim.

24.     **Claim Chart.**  **Exhibit A** to the Plan and Disclosure Statement which lists all Claims filed against the Debtor as of the date reflected therein.

25.     **Claims Objection Deadline.**  One hundred eighty (180) days following the Effective Date, which date may be extended by the Bankruptcy Court upon motion of any party in interest for cause.

26.     **Class.**  A category of Claims which are substantially similar to each other and into which Allowed Claims are grouped and classified pursuant to the Plan, unless a member of the Class has agreed to a subordinated treatment.  The Classes provided for in the Plan are summarized in Article IV of the Disclosure Statement and Article III of the Plan.

27.     **Committee.**  The Official Committee of Unsecured Creditors appointed by the OUST on June 9, 2022, pursuant to § 1102 of the Bankruptcy Code.

28.     **Confirmation.**  The entry of the Confirmation Order on the docket of the Bankruptcy Court.

29.     **Confirmation Date.**  The date upon which the Confirmation occurs.

30.     **Confirmation Hearing.**  The hearing or hearings held by the Bankruptcy Court to consider and rule upon the Debtor's request for confirmation of the Plan.

31.     **Confirmation Order.**  The order entered by the Bankruptcy Court confirming the Plan.

32.     **Creditor.**  A Person asserting a Claim; *aka* a Claimant.

33.     **Cure Claim.**  A claim based upon the Debtor's default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor under sections 365 or 1123 of the Bankruptcy Code.

34.     **Debtor.**  Front Sight Management LLC is the chapter 11 debtor in the Case.

35.     **DIP Financing.**  The post-petition credit facility of up to $5 million extended by FS DIP to the Debtor and approved by the Bankruptcy Court by the Final DIP Order, estimated to

be approximately $5.2 million as of the Effective Date including interest and fees.

36.    **Disallowed.**  With respect to a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero, or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

37.    **Disbursing Agent.**  Stretto, the Debtor's current Noticing Agent, will be the Disbursing Agent under the Plan.

38.    **Disclosure Statement.**  The Second Amended Disclosure Statement (as may be further amended or modified) prepared by the Debtor as required by § 1125 of the Bankruptcy Code describing the Plan.

39.    **Disputed Claim.**  Disputed Claims include: (i) a Claim which has been scheduled as disputed, contingent or unliquidated where a Proof of Claim has not been timely filed thereafter; (ii) a Claim as to which an objection has been timely filed with the Bankruptcy Court, and which objection has not been withdrawn on or before any date fixed for filing such objections by the Plan or by order of the Bankruptcy Court and has not been overruled or denied by a Final Order; and (iii) any Claim listed as a Disputed Claim on the Claim Chart.

40.    **Distribution(s).**  Any distribution by the Reorganized Debtor to any Class, Claimant or Creditor.

41.    **Effective Date.**  The second Business Day after the Confirmation Date, provided that the Bankruptcy Court has waived the provisions of Bankruptcy Rule 3020(e) and no stay of the Confirmation Order is in effect.  If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the Effective Date will be the second Business Day which is at least fifteen (15) days following the date of entry of the Confirmation Order, providing there has been no

2836572

appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness of the Confirmation Order, the Effective Date shall be the second Business Day after the stay is no longer in effect with respect to the Confirmation Order.

42.    **Equity Interest.**  An "equity security" as defined in § 101(16) of the Bankruptcy Code, including membership units and interests.

43.    **Equity Holder(s).**  A holder of any Unit or an Equity Interest.  Dr. Ignatius Piazza, VNV Dynasty Trust – FS I, and VNV Dynasty Trust – FS II were the Equity Holders of the Debtor on the Petition Date.  Dr. Ignatius Piazza held 1% voting interest and VNV Dynasty Trust – FS I and VNV Dynasty Trust – FS II each held a 49.5% non-voting interest in the Debtor.

44.    **Estate.**  The estate of the Debtor created upon commencement of the Case pursuant to § 541 of the Bankruptcy Code.

45.    **Exit Financing.**  Financing in the sum of approximately $24 million consisting of the New Value Contribution from the New Equity Investor.

46.    **Executory Contract.**  A contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47.    **Final Fee Application(s).** The final request for payment of Professional Fee Claims.

48.    **Final DIP Order.**  The *Final Order: (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Liens and Administrative Expense Claims, (III) Authorizing Debtor's Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Granting Other Related Relief* [ECF No. 228] entered by the Bankruptcy Court on July 1, 2022.

49.    **Final Order.**  An order or judgment of the Bankruptcy Court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear have been waived in writing in form and substance satisfactory to the Debtor prior to the Effective Date, or to the Reorganized Debtor after the Effective Date, or, in the event that an appeal, writ of certiorari, or

re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought and denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired.

50.  **Front Sight Property.**  The Debtor's primary place of business located at 1 Front Sight Road, Pahrump, Nevada 89061, Nye County Assessor's Parcel Nos. 045-481-05 and 045-481-06, consisting of 550 acres of raw land and approximately 500 acre feet of water rights.

51.  **FS DIP.**  The Debtor's senior secured lender FS DIP, LLC, whose debtor in possession financing to the Debtor was approved, pursuant to 11 U.S.C. § 364, by Final Order of the Court.  See, ECF No. 228.

52.  **General Unsecured Claim.**  A Claim against the Debtor that is not secured by a charge against, or interest in, any of the Debtor's Assets, that is not an Administrative Claim, a Priority Claim, or a Priority Tax Claim.

53.  **Holder(s).**  A Person holding a Claim or Interest against the Debtor, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no objection to the transfer having been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no later than the Confirmation Date.  In other words, after the Effective Date, without the express consent of the Reorganized Debtor, no transfer of Claims will be recognized by the Reorganized Debtor for Distributions made pursuant to the Plan.

54.  **Impaired.**  When used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of § 1124 of Bankruptcy Code.

55.  **Interest.**  When "Interest" is used in the context of holding an equity security or unit of the Debtor (and not used to denote (i) the compensation paid for the use of money for a specified time and usually denoted as a percentage rate of interest on a principal sum of money, or (ii) a security interest in property), then "Interest" shall mean an interest or share in the Debtor of the

12

type described in the definition of "Equity Interest."

56.    **Litigation Claims.**  Any and all Causes of Action of the Effective Date, including without limitation all causes of action arising under chapter 5 of the Bankruptcy Code, including without limitation those causes of actions which could be brought by the Debtor under one or more of sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code against any Person or other entity, including any governmental entity, who received an avoidable transfer from the Debtor, including but not limited to insiders, employees, officers, and equity holders of the Debtor.  Although the Debtor has not concluded its investigation of all the potential Litigation Claims and all the potential parties to such claims, a non-exclusive summary of known potential Litigation Claims is described in the Disclosure Statement.

57.    **New Value Contribution.**  The approximately $19.575 million Cash Contribution by the New Equity Investor plus approximately $5.2 million contribution of FS DIP's secured claim (for a total of at least $24.775 million) in exchange for the issuance of 100% of the New Equity Interests in the Reorganized Debtor to the New Equity Investor.

58.    **New Equity Interests.**  The new equity interests to be issued on the Effective Date.

59.    **New Equity Investor.**  Nevada PF, LLC, an affiliate of the Debtor's post-petition lender FS DIP, or its assignee.

60.    **Noticing Agent.**  Stretto is the claims and noticing agent employed in the Debtor's bankruptcy case.

61.    **OUST.**  Office of the United States Trustee for Region 17.

62.    **Person.**  Person shall have the same meaning as in § 101(41) of the Bankruptcy Code.

63.    **Petition Date.**  May 24, 2022, the date on which the Debtor filed its voluntary petition for relief under chapter 11, thereby commencing this Case.

64.    **Plan.**  This *Second Amended Plan of Reorganization* (as may be further amended or modified) proposed by the Debtor and including, without limitation, all exhibits, supplements, appendices and schedules thereto, either in its present form or as it may be altered,

2836572

amended, supplemented, or modified from time to time.

65. **Plan Supplement.**  Collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules.  The Plan Supplement shall be filed with the Bankruptcy Court by no later than October 21, 2022.

66. **Post-Confirmation Status Report.**  The post-confirmation status report to be filed by the Reorganized Debtor if so ordered by the Bankruptcy Court.

67. **Priority Claim.**  A Claim entitled to priority under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim pursuant to § 507(a)(8) of the Bankruptcy Code.

68. **Priority Tax Claim.**  A Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

69. **Professional Fee Applications.**  Applications filed pursuant to sections 330, 331 or 503(b)(4) of the Bankruptcy Code for allowance of Administrative Claims relating to the compensation and reimbursement of expenses of Professionals employed pursuant to an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code for services provided and expenses incurred prior to the Effective Date.

70. **Professional Fee Claims.** (A) a claim under sections 327, 328, 330, 331, 503(b), 1103 or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred on and after the Petition Date and prior to the Effective Date on behalf of the Estate by a Professional duly employed and authorized by an Order of the Bankruptcy Court; or (b) a claim under § 503(b)(4) of the Bankruptcy Code for reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under § 503(b)(3)(D) of the Bankruptcy Code for making a substantial contribution to the Estate.

71. **Professionals.**  Those Persons (i) that are subject to the retention pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103 and/or 1106 of the

2836572

Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to sections 330 and 503(b)(2) of the Bankruptcy Code.

72.    **Proponent.** The proponent of the Plan is the Debtor.

73.    **Pro Rata.**  Pro rata means proportionate so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which the Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

74.    **Reorganized Debtor.**  The Debtor following the occurrence of the Effective Date.

75.    **Reserve Account.**  An account created, and in an amount determined, by the Reorganized Debtor pending the resolution of a Disputed Claim, containing a sufficient amount to satisfy such Disputed Claim in a manner consistent with that Claim's treatment under the Plan should it ultimately become an Allowed Claim.

76.    **Scheduled**.  Scheduled means the information set forth in the Schedules.

77.    **Schedules.**  The Schedules of Assets and Liabilities filed by the Debtor in accordance with § 521 of the Bankruptcy Code and Bankruptcy Rule 1007 [ECF No. 137], as the same may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the Effective Date.

78.    **Secured Claim.**  A Claim that is secured by a lien against any Assets to the extent of the value of the Estate's interest in such Assets, or to the extent of the amount of such Claim subject to setoff in accordance with § 553 of the Bankruptcy Code, in either case determined pursuant to § 506(a) of the Bankruptcy Code.

79.    **Unclaimed Distribution.**  Any Distribution made by the Reorganized Debtor or the Disbursing Agent to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a

2836572

proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the date such checks were issued, or (d) disbursements that were not made because the Holder of such Allowed Claim failed to provide required tax information within forty-five (45) days after the Reorganized Debtor or the Disbursing Agent have sent any request for same to such Claimant's address as reflected in the Schedules and/or such Claimant's Proof of Claim.

80. **Unclassified Claim.** Any Claim which is not part of any Class, including Administrative Claims and Priority Tax Claims.

81. **Unimpaired.** A Claim is unimpaired when it is within a class that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

82. **Unsecured Claim.** Any Claim, including without limitation any claim arising under § 502(g) of the Bankruptcy Code, that is not secured by a lien on, security interest in, or charge against, any Asset.

**B.      Exhibits.**

All Exhibits to this Plan and to the Disclosure Statement are incorporated into and are part of this Plan as if set forth in full herein.

**C.      Computing Time Periods.**

In computing any period of time prescribed or contemplated by the Plan, Bankruptcy Rule 9006(a) shall apply.

**D.      Notices and Delivery of Documents.**

All notices, correspondence, and other deliveries under the Plan must be directed as follows:

To the Debtor or Reorganized Debtor:

Front Sight Management LLC
1 Front Sight Road
Pahrump, NV 89061

With a Copy to:

Susan K. Seflin
BG Law LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Fax: (866) 995-0215
Email: sseflin@bg.law

16

2836572

### III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THIS PLAN

**A.    What Creditors and Interest Holders Will Receive Under this Plan.**

As required by the Bankruptcy Code, this Plan classifies Claims and Interests in various Classes according to their right of priority under the Bankruptcy Code.  This Plan states whether each Class of Claims or Interests in impaired or unimpaired.  This Plan provides the treatment each Class will receive.

**B.    Unclassified Claims.**

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following Unclassified Claims in a Class.

**1.    Administrative Claims.**

Administrative Claims are for costs or expenses of administering the Debtor's Chapter 11 Case which are allowed under Bankruptcy Code Section 507(a)(1).  Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtor in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto.  The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date unless a particular Claimant agrees to a different treatment.  After the Effective Date, while the Debtor's Chapter 11 Case remains open, the Reorganized Debtor will (i) file with the United States Trustee quarterly reports; and (ii) timely pay fees incurred pursuant to 28 U.S.C. Section 1930(a)(6).[5]

The following chart lists all of the Debtor's Section 507(a)(1) administrative claims and their

---

[5] The quarterly fees owed to the United States Trustee are due and owing every quarter, without the requirement for the United States Trustee to file an administrative claim or a proof of claim. There is also no bar date for quarterly fees.

treatment under the Plan.

| NAME | AMOUNT OWED[6] | TREATMENT |
|---|---|---|
| Administrative Claims (Incurred in the Ordinary Course of Business) | Estimated at approximately $75,000 to $500,000 | Allowed Administrative Claims representing post-Petition Date liabilities incurred by the Debtor in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such liabilities and any agreements relating thereto. |
| BG Law LLP, bankruptcy counsel to the Debtor | Approximately $150,000 in addition to the post-petition payments to BG pursuant to the order approving the Interim Compensation Motion [ECF No. 318] (the "Interim Compensation Order") and in addition to the amounts provided for in the Debtor's DIP Financing budget. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Province, LLC, financial advisor to the Debtor | Approximately $100,000 in addition to the post-petition payments made by the Debtor in connection with the Interim Compensation Order and in addition to the amounts provided for in the Debtor's DIP Financing budget. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Lucas Horsfall, accountant to the Debtor | Approximately $40,000 [in addition to the amount that has been paid pursuant to its ordinary course work done as approved the Lucas Horsfall Order]. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Greenberg Traurig, special membership counsel to the Debtor | $50,000 estimated | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Stretto, claims, noticing and solicitation agent for the Debtor | $0 | Paid in the ordinary course of business pursuant to the order approving Stretto's employment [ECF No. 64] |

---

[6] The amounts set forth in this chart are estimates of the administrative claim amount that the Debtor believes each administrative claimant may be entitled to on the Effective Date in addition to the amounts provided for in the Debtor's DIP Financing budget.  The amounts set forth in this chart are subject to change.  Currently there is a discrepancy between the projected/estimated amount of Professional Fee Claims and the amount available under the Plan to pay Professional Fee Claims.

2836572

| NAME | AMOUNT OWED[6] | TREATMENT |
|---|---|---|
| Carlyon Cica CHTD., Nevada counsel to the Committee | Approximately $100,000 in addition to the post-petition payments made by the Debtor in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Kelley Drye & Warren LLP, counsel to the Committee | Approximately $350,000 in addition to the post-petition payments made by the Debtor in connection with the Interim Compensation Order and the amount provided for in the DIP Financing budget. | The Debtor believes that the amount ultimately allowed may be less but was provided with an estimate by Kelley Drye & Warren LLP.<br><br>Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Dundon Advisers LLC, financial advisor to the Committee | Approximately $100,000 in addition to the post-petition payments made by the Debtor in connection with the Interim Compensation Order. | Paid in full on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| **TOTAL** | Between Approximately $965,000 and $1,390,000 est. [7] | Paid in the manner described above |

<u>Reservation of Rights</u>

Nothing in this Plan or Disclosure Statement and nothing set forth in the above chart should be construed as an admission by the Debtor or any other party as to the validity of the asserted / projected Professional Fee Claims. The Debtor, the New Equity Investor, the OUST, Creditors and all other parties in interest reserve all rights to object to Professional Fee Claims.

<u>Court Approval of Fees Required:</u>

The Bankruptcy Court must approve, or must have previously approved on a final basis, all Professional Fee Claims listed in the foregoing chart before they may be paid. Only the amount of fees and expenses approved by the Bankruptcy Court is required to be paid under the Plan. The administrative claim amounts set forth above for professional fees and expenses simply represent the Debtor's best estimate as to the amount of Allowed Professional Fee Claims, which estimates assume that the Debtor makes all of the post-petition professional fee monthly payments that the Bankruptcy Court has authorized the Debtor to make. The actual Administrative Claims for

---

[7] Not all of these claims will be paid from the Cash Contribution. Some will be paid in the ordinary course of business, and some are provided for in the Debtor's DIP Financing budget.

19

Professional fees and expenses may be higher or lower.  By voting to accept the Plan, Creditors are not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims for professional fees and expenses, and Creditors are not waiving any of their rights to object to the allowance of any of these Professional Fee Claims.  Also, the Professionals employed in this Case may, prior to the Effective Date, seek Court approval of interim fees and expenses incurred in excess of the post-petition professional fee monthly payments received by such Professionals, pursuant to prior orders of the Bankruptcy Court.  To the extent any such interim fees and expenses are allowed by the Bankruptcy Court and paid by the Debtor prior to the Effective Date, that will reduce the amount of professional fees and expenses to be paid by the Reorganized Debtor.

**The last day to file any Administrative Claims (but NOT for ordinary post-petition operating obligations or Professional Fee Claims) is thirty (30) days after the Effective Date.** Administrative expenses will be paid on the later of the Effective Date or 10 days after the entry of a Final Order allowing the administrative expense, unless the administrative claimant has consented otherwise in writing.  On or before the Effective Date, the Debtor or the Reorganized Debtor will serve notice of an administrative bar date on all potential administrative claimants including, but not limited to, the Debtor's post-petition suppliers, service providers and employees.

**2.    Priority Tax Claims.**

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the Petition Date.  The Debtor believes that it owes $500 to the Internal Revenue Service.  The Reorganized Debtor will pay this Priority Tax Claim on the Effective Date.  If there are any other Allowed Priority Tax Claims as of the Effective Date, the Reorganized Debtor will pay those Allowed Priority Tax Claims in full by the Reorganized Debtor over a period not exceeding five years from the Petition Date.  The State of Nevada Department of Taxation has filed amended Proof of Claim 150-2 against the Debtor asserting an unsecured priority claim in the amount of $73,215.50 and a general unsecured claim of $3,884.14.  It appears that this claim arises out of post-petition taxes due, which the Debtor believes it is current

2836572

on.  The Debtor is in the process of investigating this claim and has estimated the liability at $100,000 for purposes of the Plan.

**C.      Classified Claims and Interests.**

      **1.      Class of Secured Claims.**

Secured Claims are claims secured by liens on property of the Estate.  The following chart sets forth the description and treatment of each of the Debtor's known Secured Claims.  The Debtor has listed the below Creditors based on the priority of their liens.

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| N/A | Secured Claim of FS DIP (an affiliate of the New Equity Investor) <br><br> Collateral Description: 1st Priority Lien on substantially all assets of the Debtor's Estate [except as set forth in ECF No. 288]. <br><br> Amount of Claim: Approximately $5,200,000 | No. | The FS DIP Secured Claim will be paid in full on the Effective Date or waived by FS DIP as part of the New Value Contribution from the New Equity Investor. <br><br> Upon the occurrence of the Effective Date and satisfaction in full of the FS DIP Secured Claim (or contribution in partial satisfaction of the new value and consideration exchanged for the Reorganized Debtor's new equity interests), the commitments and obligations under the FS DIP loan agreements and the Final DIP Order are terminated, and FS DIP's security interest in the Debtor's Assets is terminated. <br><br> **Unimpaired.  This Claim is a Secured Claim and will be satisfied in full on the Effective Date.  Presumed to accept the Plan and not entitled to vote.** |
| 1 | Secured claim of LVDF <br><br> Collateral Description:  Real property located at 1 Front Sight Road, Pahrump, NV 89061 ("Front Sight Property") <br><br> Interest rate: Non-Default – 6% <br><br> Maturity Date – October 4, 2021 <br><br> *Debtor has a pending action against LVDF and believes that it has significant affirmative claims against LVDF and significant offsets. | Yes. | Debtor to file objection to LVDF's claim. This Claim is Contingent and Disputed. <br><br> **Treatment:** <br><br> Pending resolution of the Debtor's objection to LVDF's claim [ECF No. 393] and the Debtor's affirmative claims against LVDF and prior to the Effective Date, $11,805,706.01 of the Cash Contribution shall be placed into a reserve account maintained by Stretto for LVDF's allowed claim.  If LVDF's allowed claim is less than the reserve amount, any surplus shall revert to the Reorganized Debtor. <br><br> Until resolution of LVDF's disputed claim, |

2836572

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| | | | and commencing January 2023, monthly interest shall accrue at the non-default rate of 6% set forth in the underlying loan documents on an estimated claim amount of $6.7 million. |
| | | | Upon resolution of the Debtor's objection to LVDF's claim and its affirmative claims against LVDF, LVDF shall be paid the balance of its allowed secured claim, if any, in full within five (5) business days of a final order allowing such claim. |
| | | | **Lien:** To the same extent and validity of its existing lien, LVDF shall have a first priority lien against the $11,805,706.01 in the reserve account until any allowed claim is paid from the reserve. |
| | | | **Collateral:** LVDF's collateral shall solely be the $11,805,706.01 in the reserve account. |
| | | | **EB5 Related Obligations:** The Reorganized Debtor shall have no EB5 Related Obligations. |
| | | | Such treatment shall be in full and complete satisfaction of the Class 1 claim. The Debtor shall have no other obligations under the requisite loan agreements or deed of trust. |
| | | | **Impaired; Entitled to Vote** |
| 2 | Secured claim of Michael Meacher dba Bankgroup Financial Services Collateral Description: Certain of the Debtor's firearms Value of Collateral: Approximately $214,569 book value of collateral set forth in the Bankgroup UCC financing statement filed March 22, 2021 Former insider. | Yes. | This Claim is Contingent and Disputed. The Debtor disputes the validity of this claim and is filing a complaint to avoid the lien which includes an objection to claim and a fraudulent transfer claim. **Treatment:** Pending resolution of the Debtor's complaint against Meacher and prior to the Effective Date, $3.3 million of the Cash Contribution shall be placed into a reserve account maintained by Stretto for Meacher's allowed claim. If Meacher's allowed claim is less than the reserve amount, any surplus shall revert to the Reorganized Debtor. Upon resolution of the aforementioned complaint, if the Class 2 claimant has an allowed secured claim, such claim shall |

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| | | | be paid in full. |
| | | | **Lien:** To the same extent and validity of its existing lien against the Debtor's guns, Meacher shall have a first priority lien against the $3.3 million in the reserve account until any allowed claim is paid from the reserve. I.e., Meacher will have a lien in the Cash in the reserve account equal to the fair market value of the Debtor's guns. |
| | | | To the extent that Meacher has a lien against guns owned by Ignatius Piazza, such lien shall not be affected by the Plan. |
| | | | **Collateral:** The $3.3 million in the reserve account but only to the same extent and validity of Meacher's interest in the Debtor's guns. |
| | | | **Impaired; Entitled to Vote** |
| 3 | M2 EPC<br><br>Collateral Description: the Front Sight Property.<br><br>Amount of Claim: $110,000 | Yes | The Class 3 claim will be paid in monthly installments of $10,000 commencing February 1, 2023 until paid in full.<br><br>Payment start date – February 1, 2023<br><br>Payment end date – December 1, 2023<br><br>**Impaired; Entitled to Vote** |
| 4 | Top Rank Builders Inc.<br><br>Collateral Description: the Front Sight Property.<br><br>Amount of Claim: $15,000 | Yes | The Class 4 claim will be paid in three monthly installments of $5,000.<br><br>Payment start date – February 1, 2023<br><br>Payment end date – April 1, 2023<br><br>**Impaired; Entitled to Vote** |

## 2.    Classes of Priority Unsecured Claims.

Certain Priority Claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in Classes. These types of Claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective

2836572

Date, equal to the allowed amount of such claim.  The Debtor does not believe that there are any valid outstanding Section 507(a)(3), (4), (6), or (7) priority unsecured claims.  If there are any allowed priority unsecured claims as of the Effective Date, these claims will be paid in full by the Reorganized Debtor on the Effective Date (or as soon as practicable thereafter).  All allowed Section 507(a)(3), (4), (6), or (7) priority unsecured claims, if any, will be characterized as Priority Claims.

There is one valid outstanding Section 507(a)(5) priority unsecured claim, which claim and treatment are set forth below:

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 5 | Employee Wage Claim of $8,758.99 | No. | Paid in full within 10 business days of the Effective Date.<br>**Not impaired; not entitled to vote.** |

### 3.  Classes of General Unsecured Claims.

General Unsecured Claims are classified and treated as follows:

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 6 | All General Unsecured Claims<br><br>Estimated at approximately $10 million to $30 million. (This number is subject to change as follows: (a) the resolution of objections to Disputed Claims; and (b) the amount of rejection damages claims asserted by members.)<br><br>[This estimation does not include any insider claims as the Debtor's insiders have agreed to subordinate all of their claims to those of General Unsecured Creditors and have agreed that their claims will not be paid.] | Yes. | The Debtor disputes the validity of many of the claims asserted by members and intends on objecting to such claims.<br><br>**Treatment:**<br>Prior to the Effective Date, $3 million of the Cash Contribution shall be placed into a reserve account for allowed general unsecured claims. Any fees relating to objections to Class 6 claims after the Effective Date will be paid from this reserve.<br><br>Upon resolution of objections to claims, holders of Class 6 allowed claims shall receive their pro rata share of the reserve amount.<br><br>**Impaired; Entitled to Vote** |

### 4.  Classes of Interest Holders.

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the

Debtor.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 7 | Equity Interests of Dr. Ignatius Piazza (1% Voting), VNV Dynasty Trust – FS I (49.5% Non-Voting) and VNV Dynasty Trust – FS II (49.5% Non-Voting) | No. | **Treatment:**  Current equity holders will not retain any equity under the Plan.  **Impaired. Presumed not to accept the Plan.** |

**D.     Means of Effectuating this Plan and Implementation of this Plan.**

**1.     Plan Funding.**

The Plan will be funded by the Exit Financing in the aggregate amount of the $19.575 million Cash Contribution and the contribution or payment of FS DIP's secured claim of approximately $5.2 million by the New Equity Investor. Of this amount, the Reorganized Debtor anticipates that it will require approximately $700,000 for working capital to meet the Debtor's operating needs.  Such proceeds will be utilized as follows:

| | |
|---|---|
| Administrative (Professional) | $500,000[8] |
| FS DIP Secured Claim | $5,200,000 (estimated) |
| LVDF Secured Claim | $11,805,706.01 (reserve account) |
| Meacher Secured Claim | $3,300,000 (reserve account) |
| Lease/Contract Cures | $0 |
| Priority Claims | $100,000 (estimated) |
| Solicitation Expenses | $125,000 |
| Unsecured Claims | $3,000,000 (reserve account) |
| Miscellaneous | $50,000 |
| Total | $24,080,706.01 |

Based on the foregoing, the Debtor is confident that sufficient funds will exist to make all required Effective Date payments.

**2.     Release of Liens.**

Within 30 days of the Effective Date, LVDF and Meacher shall file releases of their respective liens against the Front Sight Property and the Debtor's guns with the appropriate

---

[8] Currently there is a discrepancy between the projected/estimated amount of Professional Fee Claims and the amount available under the Plan for Professional Fee Claims which will have to be resolved prior to Confirmation.

25

government agencies (the "Release Procedures").  In the event that the foregoing parties do not complete the Release Procedures, the Reorganized Debtor shall be granted, pursuant to the Confirmation Order, power of authority for the limited purpose of implementing and consummating the Release Procedures.

The Confirmation Order shall provide that Meacher's and LVDF's respective liens attach, to the same extent and validity of their prepetition liens, to their respective reserve accounts.

**3.      Composition of the Reorganized debtor and Post-Confirmation Management.**

On the Effective Date, the Reorganized Debtor will remain a Nevada limited liability company.  The Reorganized Debtor's managing member shall be William W. Wilson.  The New Equity Investor (Nevada PF, LLC or its assignee) will own a 100% equity interest in the Reorganized Debtor as of the Effective Date.

The Debtor currently anticipates that the managing member of the e Reorganized Debtor immediately following the Effective Date will be William W. Wilson.  The New Equity Investor currently operates under the name of PrairieFire and its business is focused on providing the most memorable and unique "special ops" experiences available to civilians worldwide.  William "Bill" Wilson is the current CEO of PrairieFire.  PrairieFire's website is https://www.prairiefire.com/, and contains a more detailed biography of Mr. Wilson.  The Debtor believes that Mr. Wilson's expertise, insight and capabilities will enable the Reorganized Debtor to succeed post confirmation.

Dr. Piazza, a current equity holder of the Debtor and its current Chief Executive Officer and manager, has agreed to act on a limited basis as a consultant for the Reorganized Debtor after the Effective Date. Dr. Piazza will not hold a management position but will enter into a consulting agreement with the Reorganized Debtor.

**4.      Disbursing Agent.**

Stretto, the Debtor's current Noticing Agent, will act as the Disbursing Agent for purposes of making most, if not all, Distributions under the Plan. Stretto will also maintain the reserve accounts for Classes 1, 2 and 6. With respect to the reserve accounts, Stretto has agreed to (i) waive all monthly maintenance fees ($550 per account per month), (ii) waive account opening fees ($3,000 savings per account), and (iii) waive all transactional fees (for wires and ACH payments).  The

Disbursing Agent will bill at discounted hourly rates of $70 an hour (Associate) and $250 an hour (Managing Director), and the Disbursing Agent has agreed to waive hourly rates related to clerical labor.

To the extent that the Reorganized Debtor acts as Disbursing Agent, it will receive no compensation for distribution services and expenses incurred pursuant to the Plan.

**5.      Objections to Claims.**

The claims Bar Date in this Case was August 8, 2022, for non-governmental entities and October 8, 2022, for governmental entities.  Attached as **Exhibit A** to this Plan is a Claim Chart, which identifies all of the Debtor's filed proofs of claims which have been filed to date against the Debtor.  Following Confirmation of the Plan, the Reorganized Debtor shall be the sole entity with the standing and authority to file objections to Claims in this case, and shall have the right to file objections to all Claims which are inconsistent with the Debtor's books and records unless the Reorganized Debtor deems the inconsistency to be insignificant.  Any proof of claim that is filed with the Bankruptcy Court and/or served on the Debtor after the Effective Date <u>will be deemed invalid</u> (without the need for the Reorganized Debtor to file an objection to such late-filed claim) unless the claimant files a motion for leave of Court to file such claim.  With respect to disputed claims which are not resolved prior to the Effective Date, the Reorganized Debtor shall have the authority, in its sole discretion, in the reasonable exercise of its business judgment to settle or compromise any Claim following the Effective Date by submitting a stipulation to the Bankruptcy Court without a notice or hearing thereon.

As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent, unliquidated or disputed claim for purposes of Confirmation of the Plan.  The Bankruptcy Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, this Case and this Estate to resolve and to adjudicate any and all such objections to Claims which are commenced or continued following the Confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim, or of any basis that the Reorganized Debtor Trustee may have to object to any such claim.

2836572

**Any Proof of Claim or Interest that is filed with the Bankruptcy Court and/or served on the Debtor or Reorganized Debtor after the Effective Date will be deemed invalid unless the Claimant files a motion for leave of Court to file such Claim.**

The Debtor specifically reserves the right to file objections to any and all Claims set forth in **Exhibit A** to this Plan, and to any subsequently filed proofs of claim. An order confirming the Plan shall not be *res judicata*, collateral estoppel, or other bar to the Reorganized Debtor's or other party in interest's right to object to such Claims after the Effective Date.

<u>Claims Arising from the Rejection of Memberships</u>

Members will have until 30 days after the Effective Date to file a proof of claim arising out of the rejection of their memberships. However, if members want to vote on the Plan, they need to file a claim no later than November 4, 2022 for voting purposes (but still have until 30 days after the Effective Date to file a proof of claim for purposes of participating in Class 6 distributions). The Effective Date is estimated to be on around November 23, 2022, which would make the bar date for filing claims related to termination of memberships on or around December 23, 2022. Please note that any proof of claim filed in an amount that is more than what the respective member has paid for his or her membership and membership benefits and promotions will be objected to.

**6.    Payment Upon Resolution of Disputed Claims.**

The Disbursing Agent will not make any payment to the holder of a Disputed Claim until such Disputed Claim becomes an Allowed Claim. Pending a resolution of the Disputed Claim, the Disbursing Agent will create a reserve account (the "Reserve Account") which will contain proposed distributions based on the Disputed Claims. Within sixty (60) days after a Disputed Claim becomes an Allowed Claim, the Disbursing Agent will make a payment on such Allowed Claim from the Reserve Account in an amount equal to what the holder of such Allowed Claim would have received if the Claim had been allowed in such amount as of the Effective Date. In the event that the Disputed Claim is disallowed, the portion of the Reserve Account which was designated for payment of the Disputed Claim will be transferred to Allowed Claims in accordance with the treatment set forth in Class 6 above.

2836572

**7.      Investigation and Prosecution of Claims and Avoidance Actions.**

As mentioned above, the Debtor intends on filing a complaint to avoid and to recover fraudulent transfers against Meacher.  The Debtor reserves its right to file an avoidance action against LVDF and any former member who received a refund before the case was filed.

As set forth in Attachment 3 to the Debtor's Statement of Financial Affairs [ECF No. 137, pgs. 100 to 104], the Debtor paid a total of $1,475,480.12 to creditors in the 90 day preference period (with respect to creditors that received $7,575 or more during the 90 day preference period). The Debtor does not believe that it has any preference claims arising out of payments made during the 90 day preference period.  The majority of the payments during this time period were to suppliers and servicer providers that continued to supply products and provide services to the Debtor during this period, and to professionals that also were providing ongoing services to the Debtor.

In connection with its investigation of insider claims, the Debtor's financial advisor prepared a detailed analysis which shows that in the four year period from before the Petition Date (i.e., 5/24/2018 through 5/24/2022), the Debtor's insiders contributed over $2 million more to the Debtor than the amount that was distributed to them.  While the Debtor's records reflect that insider transfers occurred in the three years before that (i.e., 5/24/2015 through 5/23/2018), the Debtor's records also reflect that the Debtor was solvent at the time and that significant income taxes were paid on the Debtor's profits from those distributions (i.e., $1.3 million for the period from 5/24/2015 through 5/23/2016, $4.9 million for the period 5/24/2016 through 5/23/2017 and $2.5 million for the period from 5/24/2017 through 5/23/2018).  Given the Debtor's solvency, profitability and the large amount of income tax paid related thereto, the Debtor believes that any fraudulent transfer action initiated against its insiders would be costly and ineffective.

The Debtor's financial advisor provided the Committee's financial advisor with its detailed four year insider transfer analysis on June 20, 2022, and shortly thereafter the Debtor's financial advisor and the Committee's financial advisor had an initial phone conference.  Neither the Committee nor its professionals contacted the Debtor's professionals about any follow up questions related thereto until approximately two months later when they requested the analysis be extended back another two years.  The Debtor's financial advisor and the Debtor's bankruptcy counsel have

immediately responded to all document and information requests from the Committee's professionals.  The Debtor does not know when or if the Committee will complete its investigation. To date, the Committee's professionals have not provided the Debtor's professionals with any analysis of alleged claims that the Committee believes exist.

The Committee is currently conducting its investigation of insider claims.  Based on its investigation of insider claims conducted to date, the Committee disputes that the estate is limited to the four-year lookback period put forth by the Debtor and whether or not there are viable claims to pursue.

The Reorganized Debtor will retain all claims against the Debtor's insiders, including its current equity holders, and such claims shall revest in the Reorganized Debtor upon the Effective Date. The retention of such claims is an important component of the consideration "package" for the New Equity Investor's agreement to pay $19.575 million in Cash to fund the Plan, to contribute or otherwise satisfy FS DIP's $5.2 million secured claim and to enable the Reorganized Debtor to continue as a going concern.  The retention of these claims by the Reorganized Debtor is part of an integrated transaction between and among the Debtor, FS DIP, the New Equity Investor and Dr. Piazza.  As such, the proposed Plan could not be accomplished without the retention of these claims. Furthermore, the Debtor does not believe that there is any value to its potential claims against insiders as set forth above.

**8.      Payment of Professional Fees and Expenses Incurred After the Effective Date.**

The Reorganized Debtor shall be entitled to employ such professionals that the Reorganized Debtor deems appropriate and to pay the fees and expenses incurred by such professionals in the ordinary course without any further order of the Bankruptcy Court.

**9.      Distributions to Be Made Pursuant to the Plan.**

Except as otherwise agreed to by the Reorganized Debtor in writing, Distributions to be made to holders of Allowed Claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's Schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay Allowed Claims shall be null

and void if not negotiated within ninety (90) days after the date such check was mailed to the intended recipient. Those funds represented by voided checks that were not timely negotiated shall become the property of the Reorganized Debtor to the extent the funds relate to distributions made to Classes 2, 3, 4 or 5. Any voided checks or unclaimed distributions relating to Class 6 shall be paid back into the Class 6 reserve maintained by Stretto.

**10.    Corporate Matters.**

Upon the Effective Date, the New Equity Investor shall be the Reorganized Debtor's sole equity holder. Therefore, the occurrence of the Effective Date shall constitute all approvals, consents and actions required by any member of the Debtor under applicable law, and shall enable the Debtor or the Reorganized Debtor to execute any documents, instruments or agreements, and to take all corporate and other actions that are specified in the Plan or the Plan Confirmation Order that are necessary or appropriate to perform, implement and effectuate the Plan. On or before October 21, 2022, the Debtor will file its Plan Supplement with the Bankruptcy Court to provide the Court and parties in interest with copies of certain documents and agreements necessary for the transition of the new equity interests in the Reorganized Debtor to the New Equity Investor. Such documents to be included with the Plan Supplement, may include, but are not limited to, the Consulting Agreement, an amended and restated operating agreement of the Reorganized Debtor, officer and director resolutions, an operational budget to ensure a seamless and uninterrupted transition of the Reorganized Debtor's business, and such other agreements the Debtor and the New Equity Investor deem reasonably necessary to effectuate the transactions contemplated by the Plan. The documents submitted with the Plan Supplement may not be in final form and will be subject to change.

**11.    Exemption from Transfer Taxes.**

Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under § 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. Transfers under the Plan that are exempt from taxes under § 1146(c) of the Bankruptcy Code include all transfers by the Debtor after the commencement of its chapter 11 case in contemplation of the Plan but prior to the Effective Date, and all transfers to and by the Reorganized Debtor. The taxes

2836572

from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

**12.    Exculpations and Releases.**

*To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor, the Committee members, FS DIP, the New Equity Investor nor any of their successors and assigns, advisors, attorneys, employees, officers, directors, shareholders, agents, members, representatives, or Professionals employed or retained by any of them whether or not by Bankruptcy Court order, each in their capacity as such, shall have or incur liability to any Person for an act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, confirming, implementing, or consummating the Plan or the transactions contemplated therein, or a contract, instrument, release or other agreement or document created or entered into in connection with the Plan; provided, however, that each of the above Persons shall be entitled to rely upon the advice of counsel concerning his or her duties pursuant to, or in connection with, the Plan or any related document, instrument or agreement; provided further that the foregoing exculpation shall have no effect on liability of any Person that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct.*

**E.    Other Provisions of this Plan.**

**1.    Treatment of Prepetition Lifetime Memberships.**

All of the Debtor's pre-petition lifetime memberships shall be rejected effective as of the Effective Date, and members shall be entitled to become members of the Reorganized Debtor pursuant to the terms set forth in **Exhibit B** hereto.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF ANY MEMBERSHIP AGREEMENT SHALL BE THIRTY (30) DAYS AFTER THE EFFECTIVE DATE (ESTIMATED TO BE AT THE END OF DECEMBER 2022).  Any claim based on the rejection of a membership agreement will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.  Any Allowed Claim resulting from the rejection of an unexpired lease or executory contract will be classified and treated

32

as a Class 6 Allowed Claim.  Please be advised that the Reorganized Debtor or other parties in interest will object to any claim filed with respect to a terminated membership agreement that arises out of a member's "Account Assets" (versus on the amount paid for such membership and such "Account Assets").

IF YOU WANT TO VOTE ON THE PLAN AND YOU HAVE NOT ALREADY FILED A PROOF OF CLAIM, YOU NEED TO FILE YOUR PROOF OF CLAIM BY **NOVEMBER 4, 2022.**

2.    **Executory Contracts and Unexpired Leases.**

a.    Assumptions.

The following is a list of the Debtor's executory contracts and unexpired leases which the Debtor may assume on the Effective Date with the obligations of the Debtor to the other parties to such executory contracts and unexpired leases to become obligations of the Reorganized Debtor. The Debtor will file its list of assumed and rejected contracts with the Plan Supplement.  Set forth below is an itemization of the defaults which the Debtor contends exist and must be cured in connection with the Debtor's assumption of such executory contracts and unexpired leases (the "Cure Amounts") if the Debtor determines the below executory contracts and unexpired leases will be assumed. The Debtor estimates that the total Cure Amounts that the Reorganized Debtor will be required to pay on the Effective Date will be approximately $0.  To the extent the Debtor determines it will assume the below executory contracts and unexpired leases, the Confirmation Order will constitute a Bankruptcy Court order approving the Debtor's assumption of all such executory contracts and unexpired leases and fixing the Cure Amounts for each such executory contract and unexpired lease in the amounts asserted by the Debtor as set forth below.

**Executory Contracts/Unexpired Leases That May Be Assumed:**

| Vendor/Lessor | Description | Vendor/Lessor Address | Cure Amount | Cure Terms |
|---|---|---|---|---|
| Evolution Insurance Brokers, LLC | Certificate of Insurance – Commercial Liability | 8722 S. Harrison St. Sandy, UT 84070 | $0 | TBD |
| Nevada Retail Network Self Insured Group | Workers' Compensation and Employers Liability Coverage | 575 S. Saliman Road Carson City, NV 89701 | $0 | TBD |
| Risk Placement Services | Evidence of Property Insurance | 1231E Basin Road, #6 Pahrump, NV 89060 | $0 | TBD |
| Scottsdale Insurance Company | Common Policy Agreement | One Nationwide Plaza Columbus, OH 43215 | $0 | TBD |

33

| Vendor/Lessor | Description | Vendor/Lessor Address | Cure Amount | Cure Terms |
|---|---|---|---|---|
| State Farm | Auto Insurance Renewal | 3250 S Highway 160, Ste 1 Pahrump, NV 89048-4876 | $0 | TBD |
| Williams Scottsman, Inc. | Amendment to Lease Agreement | PO Box 91975 Chicago, IL 60693-1975 | $0 | TBD |
| Maverick | Merchant Agreement | 26520 Agoura Road 1st Floor Calabasas, CA 91302 | $0 | TBD |

      b.    <u>Rejections.</u>

Except as otherwise set forth on its list of rejected contracts in the Plan Supplement, the only contracts that the Debtor is rejecting are its membership agreements. All membership agreements will be deemed rejected and the Court order confirming the Plan will constitute a Court order approving the Debtor's rejection of such membership agreements. To the extent that any member whose membership was terminated prior to the Petition Date asserts that somehow he/she/they have an interest in a lifetime membership, such membership agreement is also deemed rejected and terminated effective as of entry of the Confirmation Order.

To the extent the Debtor is a party to any executory contract and/or unexpired lease that is not addressed above, such executory contract or unexpired lease will be deemed rejected, and the Court order confirming the Plan will constitute a Court order approving the Debtor's rejection of all such executory contracts and unexpired leases.

      c.    <u>Cures.</u>

The Cure Amounts that the Debtor believes are required are set forth in the charts in section a above. Any party who wishes to object to the Debtor's assumption of any of the unexpired leases or executory contracts and/or to the Cure Amounts of any defaults the Debtor believes exist must file a written objection with the Bankruptcy Court no later than 14 days prior to the date first set for the Plan Confirmation Hearing, and serve such objection on counsel to the Debtor. The Bankruptcy Court may deem the failure of any party to file such a timely objection to constitute consent to the Debtor's assumption of the unexpired leases and executory contracts set forth above and to the Cure Amounts of any defaults the Debtor must cure in connection with the Debtor's assumption of these unexpired leases and executory contracts.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING

2836572

FROM THE REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE WHICH IS REJECTED ON THE EFFECTIVE DATE SHALL BE THIRTY (30) DAYS AFTER THE EFFECTIVE DATE.  Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.  Any Allowed Claim resulting from the rejection of an unexpired lease or executory contract will be classified and treated as a Class 6 Allowed Claim.

**3.    Risk Factors.**

The primary risk of implementing the Plan would be the Debtor's inability to obtain an entered final Confirmation Order prior to November 29, 2022, the current deadline for the Debtor to confirm its plan pursuant to the Final DIP Order, or prior to December 1, 2022, the current deadline for the Debtor to obtain such an order pursuant to its agreement with the New Equity Investor. If the Debtor does not obtain an entered final Confirmation Order by November 29, 2022, then pursuant to the Final DIP Order, that will constitute an Event of Default under the DIP Financing, which could cause the Debtor to have to convert its case to one under chapter 7 of the Bankruptcy Code and which could result in the sale of the Debtor's Assets (with no two year membership available to members and with all of the Debtor's employees being terminated).

If the Plan Confirmation Order is not entered by November 29, 2022, the Debtor will also run out of money to fund its operations and its bankruptcy case.

The termination of existing memberships as of the Effective Date may materially increase the amount of general unsecured claims in this case, which would then greatly decrease any distribution to be received for holders of Class 6 allowed general unsecured claims.

If the Debtor is not successful in objecting to various claims, then the projected unsecured claim pool of between $10 million and $30 million could be significantly higher.

There is a risk that the Plan is not confirmable under section 1129(a) of the Bankruptcy Code because not all impaired classes vote in favor of the Plan.

There is a risk that the Plan is not confirmable under the "cramdown" provision of section 1129(b) of the Bankruptcy Code.

There is a risk the Reorganized Debtor will not obtain the requisite membership interest to

2836572

support ongoing operations.

**4.     Changes in Rates Subject to Regulatory Commission Approval.**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**F.     Retention of Jurisdiction.**

Following the Confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court shall retain such jurisdiction as is legally permissible including for the following purposes:

1.     To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

2.     To determine the allowability, classification, or priority of Claims and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

3.     To determine the extent, validity and priority of any lien asserted against any Asset or property of the Debtor or the Debtor's Estate;

4.     To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary or appropriate for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date;

5.     To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of Professionals for the period on or before the Effective Date;

6.     To determine any request for payment of administrative expenses;

7.     To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom;

8.     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this Case whether before, on, or after the Effective Date, including Claims, Causes of Action, and Avoidance Actions, and the Reorganized

36

Debtor shall have the right to commence in the Bankruptcy Court any Causes of Action, including any Avoidance Actions, after the Effective Date, and to continue with the prosecution in the Bankruptcy Court of any such claims, Causes of Action and Avoidance Actions which were commenced but not completed by the Debtor prior to the Effective Date;

9.    To determine such other matters and for such other purposes as may be contemplated by the Plan or Confirmation Order;

10.    To modify the Plan under § 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan, or to reconcile any inconsistency in the Plan, so as to carry out its intents and purposes;

11.    Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions, to take such other actions, or make such other orders, as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any Person or other entity of the Plan or the Confirmation Order;

12.    To issue such orders in aid of consummation, and in aid of implementation, of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any Person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

13.    To enter a final decree closing the Case.

**G.    Amendments to Operating Agreement.**

On the Effective Date, the member(s) of the Reorganized Debtor shall be authorized to amend the operating agreement to take all actions necessary and appropriate to carry out the terms of the Plan.

**H.    Dissolution of the Committee.**

On the Effective Date, the Committee, to the extent that it serves as the Official Committee of Unsecured Creditors appointed in this Case, shall be dissolved and its members shall be released and discharged from all rights and duties arising from or related to this Case.

37

2836572

**I.      Miscellaneous Issues Regarding Plan Distribution.**

**1.      No Fractional Distributions.**

No Distributions in fractions of hundredths of U.S. Dollars ($0.00's) (i.e., cents) shall be issued.  If the Distribution amount allocated to an Allowed Claim at the time of a Distribution hereunder would include fractions of cents, the amount to be distributed to the holder of such Claim shall be rounded down to the highest integral number of cents in the applicable Claim amount.

**2.      Name and Address of Holder of Claim.**

For purposes of all distributions under the Plan, the Disbursing Agent can rely on the name and address of the holder of each Allowed Claim as shown on any timely filed proof of claim and, if none, as shown on the Debtor's Schedules, except to the extent that the Disbursing Agent first receives adequate written notice of a change of address, properly executed by the Holder or its authorized agent.

**3.      Unclaimed Distribution.**

Any Unclaimed Distribution under the Plan shall be forfeited to the Reorganized Debtor.  An Unclaimed Distribution is any Distribution made by the Reorganized Debtor to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the date such checks were issued, or (d) disbursements that were not made because the Holder of such Allowed Claim failed to provide required tax information within forty-five (45) days after the Reorganized Debtor has sent any request for same to such Claimant's address as reflected in the Schedules and/or such Claimant's Proof of Claim.

**4.      De Minimus Cash Distributions.**

Notwithstanding anything to the contrary in the Plan, no Cash Distributions shall be made on account of any Allowed Claim if the Cash Distribution amount is less than $25.00.  Holders of Allowed Claims who would otherwise be entitled to a Distribution in the amount of less than $25.00 shall receive no Distribution on account of such Allowed Claim because the value of such Allowed

2836572

Claim would be de minimus and the administrative costs associated with processing and mailing the Distributions to the holder of such Allowed Claim would likely exceed the amount of the Distribution.

## IV.    AUCTION AND OVERBIDDING

**Equity Interests of the Debtor**

Upon the Effective Date of the Plan, all equity interests in the Debtor will be eliminated and consequently, the Debtor's equity interest holders are conclusively deemed to reject the Plan.  Also upon the Effective Date of the Plan and subject to the allowance for overbidding as set forth herein, the New Equity Investor (previously defined as Nevada PF) will receive 100% of the New Equity Interests in the Debtor (and all of the Debtor's Assets including all claims, if any, against the Debtor's insiders) in exchange for the New Value Contribution to the Debtor's estate as follows: (a) $19.575 million in cash to fund the Plan including a $3 million contribution to Class 6; (b) cause FS DIP's approximately $5.2 million secured claim to be contributed to the estate; and (c) offer all existing members the benefits as set forth in **Exhibit B** hereto.  It is currently estimated that the New Value Contribution will total approximately $24,775,000.  In exchange for the New Value Contribution, Nevada PF shall receive the New Equity Interests in the Reorganized Debtor, subject to the allowance for overbidding as set forth herein.

In order to comply with the Bankruptcy Code and Ninth Circuit Court of Appeals case law, the New Value Contribution must be: (1) new; (2) substantial; (3) money or money's worth; (4) necessary for a successful reorganization; and (5) reasonably equivalent to the value of interest received.  Here, the New Value Contribution satisfies these requirements because the New Value Contribution to be submitted: (1) constitutes new contributions; (2) is substantial; (3) is money or money's worth; (4) is necessary for a successful reorganization; and (5) is equal to or greater than the value to be received.

**Overbidding**

On the Effective Date, the Reorganized Debtor shall issue the New Equity Interests to Nevada PF pursuant to the terms set forth herein and in the Plan. Under the Nevada PF bid, for tax-related purposes, it may be necessary for the New Equity Interests to initially be transferred to the

old Equity Holders, with a subsequent transfer to a new holding company, and to make certain tax filings, in each case prior to the Effective Date. The New Equity Interests to be issued to the New Equity Investor will be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code. The Debtor and the New Equity Investor or a Winning Bidder (defined below) may agree upon a more efficient tax structure but it will not affect creditors recoveries.

Pursuant to the Plan, 100% of the Debtor's equity will be issued to the New Equity Investor in exchange for the New Value Contribution. Persons interested in acquiring some or all of the New Equity Interests of the Debtor must submit a Qualifying Bid (as defined herein) to the Debtor's counsel **by 4:00 p.m., Prevailing Pacific Time, on or before November 4, 2022** (the "Initial Bid Deadline"), unless such date is extended in the sole discretion of the Debtor and the New Equity Investor, and in consultation with the Committee.

A bid received by the Debtor for the New Equity Interests shall constitute a "Qualifying Bid" if such bid includes the following, in form and substance reasonably satisfactory to the Debtor:  (i) a fully executed definitive purchase agreement for the New Equity Interests which sets forth all material terms and conditions of the proposed acquisition including, without limitation, the New Equity Interests to be acquired, liabilities to be assumed and proposed consideration to be paid by the bidder, and such other terms as the bidder deems appropriate  (the "Definitive Agreement") in a minimum bid amount of $25,150,000, (ii) evidence that the bidder has the necessary authorizations and approvals to engage in the transaction without the consent of any entity that has not already been obtained; (iii) a cashier's check or wire transfer made payable to the Debtor in an amount equal to $5 million (the "Deposit") and (iv) evidence that the bidder can consummate the proposed transactions. Additionally, in order to constitute a "Qualifying Bid", (i) the transaction proposed by the Definitive Agreement may not be conditioned on the outcome of unperformed due diligence and (ii) the Definitive Agreement must describe the bidder's intention with respect to Executory Contracts and/or Unexpired Leases of the Debtor in order for the assumption, assignment and/or rejection of such Executory Contracts and Unexpired Leases to be timely effectuated under the Plan.  Finally, in order to be deemed a "Qualifying Bid" the Definitive Agreement must be accompanied by a letter

affirmatively: (i) setting forth a full disclosure of the identity of the bidder (and any other person(s) subject to any agreement, arrangement or understanding with such bidder in connection with the bid), the contact information for such bidder and full disclosure of any affiliates or insiders of the Debtor involved in such bid; (ii) stating that the bidder is prepared to purchase the business operations and New Equity Interests upon the terms and conditions set forth its Definitive Agreement; (iii) summarizing the consideration proposed under the Definitive Agreement (i.e., cash and assumed liabilities); (iv) stating the aggregate value of the proposed consideration (which statement of value shall not be binding on the Debtor or the Bankruptcy Court, but which must be a minimum of $25,150,000); and (v) stating the form of Deposit (i.e., cashier's check or cash) made by the bidder.

Each Definitive Purchase Agreement shall provide for: (i) the allocation of certain expenses in connection with the purchase of the Debtor's New Equity Interests, including but not limited to taxes, recording and title fees, title insurance costs and other similar expenses, and whether such expenses shall be paid by the bidder or Debtor; and (ii) any specific due diligence period (which, if any, will be very limited because of the timing in this case).  The Debtor shall consider the allocation of these expenses and the duration of the due diligence period when considering which bid is the highest and best offer.  Each Definitive Purchase Agreement, including the allocation of expenses associated with the transaction and the duration of any due diligence period, shall be subject to approval by the Bankruptcy Court.

Within 24 hours of the Initial Bid Deadline, the Debtor shall advise the Committee of any bids received.

Within two (2) Business Days of each bidder's timely delivery of all required materials as detailed in the preceding paragraph, the Debtor shall notify each bidder, in writing, as to whether its bid has been deemed a Qualified Bid in accordance with bidding requirements listed herein.  Each bidder who submits a Qualified Bid shall be deemed a "Qualified Bidder".  As indicated above, Nevada PF's initial bid consists of the New Value Contribution – which includes the benefits offered to existing members as set forth in **Exhibit B**.

2836572

In the event one or more Qualified Bids are received, the Confirmation Hearing shall also serve as an auction (the "Auction"), whereby Qualified Bidders may submit subsequent bids for the New Equity Interests, provided (i) that the initial bid at the Auction must exceed Nevada PF's bid by at least $375,000.00,[9]  - for a minimum initial bid amount of $25,150,000 (ii) each subsequent bid at the Auction must exceed the previous bid by at least $50,000.00 (the "Bidding Increment"), and (iii) any Qualified Bidder which submits a subsequent bid at the Confirmation Hearing in excess of its Qualifying Bid must provide evidence that it has the financial capability to purchase the New Equity Interests at the new, higher purchase price as set forth in its subsequent bid.  At the conclusion of the Auction, the Bankruptcy Court (i) shall determine which bid constitutes the highest and best offer and which bidder constitutes the winning bidder (respectively, the "Winning Bid" and the "Winning Bidder") and (ii) approve the Winning Bid at the Confirmation Hearing.

Promptly after the entry by the Bankruptcy Court of its order approving the Winning Bidder as the party that will be issued the New Equity Interests on the Effective Date, which may be the Confirmation Order, the Deposits submitted by all Qualified Bidders (other than the bid of the Winning Bidder(s)) shall be returned to the respective Qualified Bidders.  The Deposit(s) of the Winning Bidder(s) shall be applied to the Cash portion of the purchase price set forth in the Winning Bidder's Definitive Agreement, as may be modified by the Winning Bid.  If a Winning Bidder fails to consummate the purchase contemplated under its Definitive Agreement, as may be modified by the Winning Bid, and (i) such failure is the result of the Winning Bidder's breach of its Definitive Agreement and (ii) the Debtor has met all closing conditions of the Winning Bidder's Definitive Agreement, the Deposit of such Winning Bidder shall be forfeited to the Debtor. Notwithstanding this forfeiture, the Debtor specifically reserves the right to seek all available damages from any defaulting Winning Bidder.

Notwithstanding the foregoing, the Bankruptcy Court may hear any aspect of the proposed sale of the New Equity Interests, including, controversies relating to any bidders' due diligence and

---

[9] The $375,000 initial overbid consists of: (a) a $100,000 break-up fee to Nevada PF; (b) estimated expenses of Nevada PF related to the overbid process of approximately $50,000; and (c) the $125,000 estimated costs of soliciting the Debtor's approximately 80,000 members (which Nevada PF agreed to pay in response to various objections to the Disclosure Statement).

42

to challenge any determination made in connection therewith.  In the event the Winning Bidder does not close on the purchase of the New Equity Interests as set forth in such Winning Bidder's Definitive Agreement, the Debtor shall seek approval of the Definitive Agreement of the next highest Qualified Bidders, until such time as a deal is finalized and the Plan is confirmed.

The Effective Date of the Plan shall not occur until the Winning Bidder completes all obligations pursuant to the Definitive Purchase Agreement (as approved by the Bankruptcy Court) including payment of the purchase price to the Debtor.

## V.    EFFECT OF CONFIRMATION OF THIS PLAN

**A.    Discharge.**

On the Effective Date, the Debtor will receive a discharge under this Plan pursuant to and in accordance with the provisions of § 1141 of the Bankruptcy Code because there has not been a liquidation of all or substantially all of the property of the Debtor's Estate.  Pursuant to § 1141(d)(1)(A),  Confirmation of the Plan will discharge "the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not – (i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan …".  11 U.S.C. §§ 1141(d)(1)(A)(i), (ii) and (iii).  **In other words, Confirmation of the Plan will effectuate a discharge as to all debts or liabilities, whether contingent, unliquidated, disputed, known or unknown, that were incurred or arose before Confirmation of the Plan.**  This includes all types of Claims and obligations arising out of and/or including, but not limited to, (i) all causes of action under state and Federal law (e.g., breach of contract, breach of fiduciary duty, etc.), (ii) trade payables, (iii) landlord claims, (iv) tax Claims including interest, (v) environmental claims, (vi) employee related claims and (vii) any other known or unknown Claim from any debt arising prior to Plan Confirmation.

**The Plan shall bind the holders of all Claims whether or not they vote to accept the Plan.  The rights afforded in the Plan and the treatment of all Claims therein shall be in complete satisfaction, discharge and release of all Claims against the Debtor or its Assets of any nature whatsoever except as otherwise specifically provided in the Plan.  Except as set**

43

**forth in the Plan, all Claims shall be forever satisfied, discharged and released in full on the Effective Date, and all holders of Claims shall be forever precluded and enjoined from asserting Claims against the Reorganized Debtor.  Any litigation pending prepetition and/or initiated postpetition in any court other than the Bankruptcy Court where relief from stay was not obtained from the Bankruptcy Court shall be deemed discharged upon Plan Confirmation and the occurrence of the Effective Date.**

**B.      Continuing Stay/Injunction.**

The automatic stay is lifted upon the Effective Date as to property of the Estate.  However, the stay continues to prohibit collection or enforcement of prepetition Claims against the Reorganized Debtor or the Reorganized Debtor's property until the earlier of the date: (1) the Debtor's bankruptcy Case is closed, or (2) the Debtor's bankruptcy Case is dismissed.  Therefore, all parties bound by the Plan shall take no action with respect to, and are enjoined from, collecting or enforcing their prepetition Claims against the Reorganized debtor as set forth herein, and as otherwise provided by operation of law, until the earlier of the date that (1) the Debtor's bankruptcy Case is closed, or (2) the Debtor's bankruptcy Case is dismissed.

**The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.**

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an interest or other right of an equity holder that is impaired pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Debtor's Estate, the Reorganized Debtor or its property on account of any such discharged Claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any

44

debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

**By accepting distribution pursuant to the Plan, each holder of an Allowed Claim receiving a Distribution pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.**

**C.    Revesting of Property in the Reorganized Debtor.**

Except as provided elsewhere in the Plan, the Confirmation of the Plan revests all property of the Debtor's Estate in the Reorganized Debtor, including, but not limited to, any Litigation Claims and the LVDF Litigation pursuant to the Plan and the Bankruptcy Code.  From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property, including payment of all business expenses and professional fees and expenses, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Reorganized Debtor shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date as fully as if the Debtor's bankruptcy Case had not been commenced; and all of the Reorganized Debtor's legal and equitable rights respecting any such claims which are not specifically waived, extinguished, or relinquished by the Plan may be asserted after the Effective Date by the Reorganized Debtor.

**D.    Modification of the Plan.**

The Debtor may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtor modifies the Plan before confirmation.  The Debtor or the Reorganized Debtor, as the case may be, may also seek to modify the Plan at any time after Confirmation of the Plan so long as (1) the Plan has not been substantially consummated, and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

2836572

**E.      Post-Confirmation Status Reports.**

Until a final decree closing the Debtor's Chapter 11 Case is entered, the Reorganized Debtor shall file regular status reports if so ordered by the Court.

**F.      Post-Confirmation Conversion/Dismissal.**

A Creditor or any other party in interest may bring a motion to convert or dismiss the Case under § 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in performing the Plan.  If the Bankruptcy Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be re-imposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during this Case.  The Plan Confirmation Order may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

**[Remainder of Page Intentionally Left Blank]**

2836572

**G.    Final Decree.**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor shall file a motion with the Bankruptcy Court to obtain a final decree to close this case.  The Reorganized Debtor shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

Dated: October 3, 2022                              Front Sight Management LLC


                                                   By: _____
                                                      Dr. Ignatius Piazza, Manager


Submitted By:

BG Law LLP



By: _/s/ Susan K. Seflin_____
        Steven T. Gubner
        Susan K. Seflin
        Jessica S. Wellington
Attorneys for Chapter 11 Debtor
and Plan Proponent

47

2836572

# EXHIBIT A

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| HIATT, BRIAN | 32165124 | 1-1 | 5/26/2022 | -- | $ 1,500 | -- | $ - | $ 1,500 | Yes |
| HANCOCK, JOHN | 32165143 | 2-1 | 5/26/2022 | -- | -- | -- | $ 5,000 | $ 5,000 | Yes |
| LORENZ, BRIAN | 32165145 | 3-1 | 5/26/2022 | -- | -- | -- | $ 12,000 | $ 12,000 | Yes |
| GRANT, JAMES | 32165147 | 4-1 | 5/26/2022 | -- | -- | -- | $ 1,997 | $ 1,997 | Yes |
| SWAIM, BRETT | 32165149 | 5-1 | 5/26/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| BOLANOS, EDGAR R. | 32165150 | 6-1 | 5/26/2022 | -- | -- | -- | $ 60,000 | $ 60,000 | Yes |
| DICKERSON, KIMBERLY KLEIN | 32165151 | 7-1 | 5/26/2022 | -- | -- | -- | $ - | $ - | TBD |
| SHOCKLEY, ELIZABETH | 32165152 | 25-1 | 5/27/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| AVANT, IRA M. [AVANT, MIKE] | 32165155 | 8-1 | 5/26/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| CAMPBELL, JUSTIN | 32165157 | 9-1 | 5/27/2022 | -- | -- | -- | $ - | $ - | TBD |
| CONWAY, KEVIN | 32165159 | 10-1 | 5/27/2022 | -- | -- | -- | $ 60,900 | $ 60,900 | Yes |
| TAYLOR, DAVID [ARTESIA AT HAFEN RANCH] | 32165160 | 11-1 | 5/27/2022 | -- | -- | -- | $ 1,899 | $ 1,899 | |
| MILLER, DR. GARY P. | 32165161 | 12-1 | 5/27/2022 | -- | -- | -- | $ 21,471,000 | $ 21,471,000 | Yes |
| JONES, MARIELLE C. | 32165163 | 30-1 | 5/27/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| DIALS, WILLIAM W. | 32165164 | 18-1 | 5/27/2022 | -- | -- | -- | $ 994 | $ 994 | |
| BARBER, SEAN | 32165166 | 19-1 | 5/27/2022 | -- | -- | -- | $ 6,000 | $ 6,000 | Yes |
| GOIT, NICK | 32165170 | 22-1 | 5/27/2022 | -- | -- | -- | $ 1,099 | $ 1,099 | Yes |
| CLEMENTS, SHAUN | 32165173 | 16-1 | 5/27/2022 | -- | -- | -- | $ 1,800 | $ 1,800 | Yes |
| KISSEE, ANDREW | 32165176 | 13-1 | 5/27/2022 | -- | -- | -- | $ 60,000 | $ 60,000 | Yes |
| BALDWIN, PATRICK | 32165177 | 37-1 | 5/27/2022 | -- | -- | -- | $ 500 | $ 500 | Yes |
| SHOCKLEY, KENNETH | 32165178 | 21-1 | 5/27/2022 | -- | -- | -- | $ 18,500 | $ 18,500 | Yes |
| GREEN, BRANDON A. | 32165179 | 36-1 | 5/27/2022 | -- | -- | -- | $ 3,997 | $ 3,997 | Yes |
| SHOCKLEY, JENNIFER | 32165180 | 23-1 | 5/27/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |

SUBJECT TO AMENDMENT

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| JONES, MAVERICK T. | 32165183 | 29-1 | 5/27/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| LEWIS, DAVID CLYDE | 32165184 | 20-1 | 5/27/2022 | -- | -- | -- | $ 2,991,000 | $ 2,991,000 | Yes |
| JONES, HEATHER M. | 32165185 | 28-1 | 5/27/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| MARZ, RICHARD F. | 32165186 | 14-1 | 5/27/2022 | -- | -- | -- | $ 22,074 | $ 22,074 | Yes |
| OWENS, JESSE | 32165187 | 39-1 | 5/27/2022 | -- | -- | -- | $ 300 | $ 300 | Yes |
| GREENLIEF, MARTY | 32165190 | 15-1 | 5/27/2022 | -- | $ 2,800 | -- | $ - | $ 2,800 | Yes |
| MCCARTHY, DAVID C. | 32165191 | 38-1 | 5/27/2022 | -- | -- | -- | $ 2,020 | $ 2,020 | Yes |
| NUNLEY, DAVID | 32165193 | 34-1 | 5/27/2022 | -- | -- | -- | $ 2,250 | $ 2,250 | |
| VOGELER, TYSON J. | 32165194 | 17-1 | 5/27/2022 | -- | -- | -- | $ 8,894 | $ 8,894 | |
| WERTH, BRIAN | 32165195 | 40-1 | 5/27/2022 | -- | -- | -- | $ 1,200 | $ 1,200 | Yes |
| JONES, KIERSTEN E. | 32165197 | 32-1 | 5/27/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| JONES, DAVID C. | 32165198 | 27-1 | 5/27/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| STARR, JAMIE | 32165199 | 24-1 | 5/27/2022 | -- | -- | -- | $ 900 | $ 900 | |
| BONK, JOSEPH | 32165201 | 26-1 | 5/27/2022 | -- | -- | -- | $ - | $ - | TBD |
| ALTENBACH, MARIA M. [VARGAS, MARIA M.] | 32165202 | 33-1 | 5/27/2022 | -- | -- | -- | $ - | $ - | TBD |
| SHORT, GARY | 32165204 | 31-1 | 5/27/2022 | -- | -- | -- | $ 104,000 | $ 104,000 | Yes |
| MALONE, PETER THEODORE | 32165208 | 35-1 | 5/27/2022 | -- | -- | -- | $ 5,000 | $ 5,000 | Yes |
| MULLEN, JACK WILSON | 32165209 | 41-1 | 5/27/2022 | -- | -- | -- | $ 550 | $ 550 | |
| HANSEN, CHESTER | 32165210 | 42-1 | 5/27/2022 | -- | -- | -- | $ 2,397 | $ 2,397 | Yes |
| CISCO, ERIC | 32165213 | 43-1 | 5/27/2022 | -- | -- | -- | $ 7,500 | $ 7,500 | Yes |
| LEWIS, GUY | 32165215 | 44-1 | 5/27/2022 | -- | $ 5,289 | -- | $ - | $ 5,289 | Yes |
| PAGE, SCOTT | 32165216 | 45-1 | 5/27/2022 | -- | -- | -- | $ 1,966 | $ 1,966 | |
| BOSS, SARAH [TAYLOR, SARAH] | 32165219 | 46-1 | 5/27/2022 | -- | -- | -- | $ 4,500 | $ 4,500 | Yes |

SUBJECT TO AMENDMENT

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| MIERS, JUDSON | 32165221 | 47-1 | 5/27/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| SCHNEIDER, RICHARD F. | 32165223 | 48-1 | 5/27/2022 | -- | -- | -- | $ 8,500 | $ 8,500 | |
| LEVY, BRIAN | 32165234 | 75-1 | 5/30/2022 | -- | -- | -- | $ 53,000 | $ 53,000 | Yes |
| LINVILLE, SAM | 32165236 | 74-1 | 5/30/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| VOTH, NICHOLAS | 32165240 | 73-1 | 5/29/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| KOCSIS, KAREENA | 32165243 | 58-1 | 5/27/2022 | -- | -- | -- | $ 300 | $ 300 | Yes |
| KOCSIS, KRISHAN | 32165244 | 57-1 | 5/27/2022 | -- | -- | -- | $ 300 | $ 300 | Yes |
| RAVEN, GREG | 32165245 | 52-1 | 5/27/2022 | -- | -- | -- | $ 11,975 | $ 11,975 | Yes |
| MOERCH, JOHN | 32165246 | 62-1 | 5/28/2022 | -- | -- | -- | $ 600 | $ 600 | Yes |
| SMITH, KENNETH | 32165247 | 56-1 | 5/27/2022 | -- | -- | -- | $ 5,000 | $ 5,000 | Yes |
| LEHMAN, DOUGLAS R | 32165248 | 72-1 | 5/29/2022 | -- | $ 997 | -- | $ - | $ 997 | Yes |
| JENSEN, SANDRA D | 32165249 | 66-1 | 5/28/2022 | -- | -- | -- | $ 6,000 | $ 6,000 | Yes |
| DEMPSEY, JACOB | 32165251 | 63-1 | 5/28/2022 | -- | -- | -- | $ 200 | $ 200 | Yes |
| REILLEY, VICTOR | 32165252 | 61-1 | 5/27/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| KAUFMANN, RUSSELL | 32165253 | 60-1 | 5/27/2022 | -- | -- | -- | $ 997 | $ 997 | |
| DAVIDSON, PAUL | 32165254 | 71-1 | 5/28/2022 | -- | -- | -- | $ 15,000 | $ 15,000 | Yes |
| HOWSON, MARK | 32165256 | 54-1 | 5/27/2022 | -- | $ 8,475 | -- | $ 2,639 | $ 11,114 | Yes |
| KOTZ, DAVID JACOBS | 32165257 | 70-1 | 5/28/2022 | -- | -- | -- | $ 3,000 | $ 3,000 | Yes |
| TANNER, NICHOLAS | 32165259 | 68-1 | 5/28/2022 | -- | -- | -- | $ 400 | $ 400 | |
| MCCANN, BARRY | 32165262 | 65-1 | 5/28/2022 | -- | -- | -- | $ 4,000 | $ 4,000 | Yes |
| PASSARETTI, PETER | 32165265 | 64-1 | 5/28/2022 | -- | -- | -- | $ 3,444 | $ 3,444 | Yes |
| ALLISON, DANIEL | 32165267 | 51-1 | 5/27/2022 | -- | -- | -- | $ 128,000 | $ 128,000 | |
| WOOTEN, STEVEN | 32165268 | 49-1 | 5/27/2022 | -- | -- | -- | $ 13,400 | $ 13,400 | Yes |

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|--------------------------------|
| KUTZ, JAMES CHARLES | 32165270 | 59-1 | 5/27/2022 | -- | -- | -- | $ 9,100 | $ 9,100 | Yes |
| KOCSIS, SANGITA | 32165271 | 55-1 | 5/27/2022 | -- | -- | -- | $ 500 | $ 500 | Yes |
| KOCSIS, STEVEN | 32165273 | 53-1 | 5/27/2022 | -- | -- | -- | $ 2,000 | $ 2,000 | Yes |
| SKINNER, KIRK CHRISTOPHER | 32165280 | 50-1 | 5/27/2022 | -- | -- | -- | $ 5,000 | $ 5,000 | Yes |
| BLAKE, KEITH A | 32165302 | 67-1 | 5/28/2022 | -- | -- | -- | $ 5,994 | $ 5,994 | Yes |
| HILTON, STANLEY | 32165305 | 69-1 | 5/28/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| HILTON, STANLEY | 32165343 | 69-1 | 5/28/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| SHORT, GARY | 32165344 | 78-1 | 5/31/2022 | -- | -- | -- | $ 104,000 | $ 104,000 | Yes |
| GENOVA, RONALD [RGEP LLC] | 32165347 | 76-2 | 6/1/2022 | -- | -- | -- | $ 70,000 | $ 70,000 | Yes |
| MOORE, MICHAEL E. | 32165349 | 77-1 | 6/1/2022 | -- | -- | -- | $ - | $ - | TBD |
| GENOVA, RONALD [RGEP LLC] | 32165350 | 76-1 | 5/31/2022 | -- | -- | -- | $ 70,000 | $ 70,000 | Yes |
| BLAKE, KEITH A | 32165351 | 67-1 | 5/28/2022 | -- | -- | -- | $ 5,994 | $ 5,994 | Yes |
| SHEEDER, WILLIAM | 32165507 | 95-1 | 6/3/2022 | -- | -- | -- | $ 3,536,400 | $ 3,536,400 | Yes |
| HICKS, GEOFFREY | 32165508 | 79-1 | 6/2/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| BADART, ROBIN | 32165509 | 86-1 | 6/3/2022 | -- | -- | -- | $ 5,000 | $ 5,000 | Yes |
| SAXTON, JOHN | 32165511 | 87-1 | 6/3/2022 | -- | -- | -- | $ 250 | $ 250 | |
| HICKS, MARYANN | 32165512 | 80-1 | 6/2/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| HICKS, ANGELA | 32165514 | 81-1 | 6/2/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| DESLAURIERS, MICHEL | 32165516 | 82-1 | 6/2/2022 | -- | -- | -- | $ 4,410 | $ 4,410 | Yes |
| SHORT, NATHANIEL | 32165519 | 88-1 | 6/3/2022 | -- | -- | -- | $ 100,250 | $ 100,250 | Yes |
| WILLIS, MICHAEL | 32165522 | 93-1 | 6/3/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| SHORT, ELI | 32165523 | 90-1 | 6/3/2022 | -- | -- | -- | $ 100,250 | $ 100,250 | Yes |
| GREENSTEIN, STEVEN | 32165525 | 83-1 | 6/3/2022 | -- | -- | -- | $ 2,500 | $ 2,500 | Yes |

SUBJECT TO AMENDMENT

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| DEMPSEY, LUKE | 32165526 | 92-1 | 6/3/2022 | -- | -- | -- | $ 3,045 | $ 3,045 | |
| HARTZELL, STEVEN | 32165528 | 89-1 | 6/3/2022 | -- | -- | -- | $ 9,300 | $ 9,300 | |
| NEWBERRY, MICHAEL | 32165529 | 91-1 | 6/3/2022 | -- | -- | -- | $ 500 | $ 500 | Yes |
| LANGIANO, MICHAEL | 32165530 | 85-1 | 6/3/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| WILLIS, LINDSEY M. | 32165531 | 94-1 | 6/3/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| CURTIS, BRIAN [CURTIS, RICK] | 32165534 | 84-1 | 6/3/2022 | -- | -- | -- | $ 3,400 | $ 3,400 | Yes |
| WAGGONER, ROBERT [WAGGONER, ROB] | 32165535 | 96-1 | 6/3/2022 | -- | -- | -- | $ 21,646 | $ 21,646 | Yes |
| O'ROURKE, CAMERON | 32165543 | 97-1 | 6/3/2022 | -- | -- | -- | $ 8,000 | $ 8,000 | Yes |
| MACER, DAVID | 32165571 | 103-1 | 6/4/2022 | -- | -- | -- | $ 2,000 | $ 2,000 | Yes |
| WEINTRAUB, MATTHEW | 32165573 | 107-1 | 6/4/2022 | -- | -- | -- | $ 2,000 | $ 2,000 | |
| ZAFERIS, DENNIS | 32165574 | 114-1 | 6/6/2022 | -- | -- | -- | $ 2,500 | $ 2,500 | Yes |
| WELLS, SHANNON L. | 32165575 | 113-1 | 6/5/2022 | -- | -- | -- | $ 500 | $ 500 | Yes |
| POZAR, JOHN | 32165577 | 105-1 | 6/4/2022 | -- | -- | -- | $ 2,500 | $ 2,500 | Yes |
| SMITH, STUART | 32165578 | 112-1 | 6/5/2022 | -- | -- | -- | $ 1,740 | $ 1,740 | Yes |
| YELTON, JODIE | 32165580 | 99-1 | 6/3/2022 | -- | -- | -- | $ 12,997 | $ 12,997 | Yes |
| PENDLEY, LEMAN W | 32165581 | 98-1 | 6/3/2022 | -- | -- | -- | $ 50,000 | $ 50,000 | Yes |
| NUNES, TREVOR | 32165583 | 108-1 | 6/4/2022 | -- | -- | -- | $ 1,000 | $ 1,000 | |
| OSWALD, FRAN | 32165584 | 100-1 | 6/4/2022 | -- | -- | -- | $ 3,600 | $ 3,600 | Yes |
| RUTH, CHARLES | 32165585 | 104-1 | 6/4/2022 | -- | -- | -- | $ 6,874 | $ 6,874 | |
| MILLIGAN, LARRY | 32165587 | 111-1 | 6/5/2022 | -- | -- | -- | $ 8,096 | $ 8,096 | |
| NESSEN, STEVEN | 32165588 | 109-1 | 6/4/2022 | -- | -- | $ 5,000 | $ - | $ 5,000 | Yes |
| JANZ, DAWN | 32165589 | 106-1 | 6/4/2022 | -- | -- | -- | $ 3,000 | $ 3,000 | Yes |
| KINNEY, GARY | 32165590 | 110-1 | 6/5/2022 | -- | -- | -- | $ 18,000 | $ 18,000 | |

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| OSWALD, STANLEY | 32165591 | 102-1 | 6/4/2022 | -- | -- | -- | $ 3,600 | $ 3,600 | Yes |
| OSWALD, FRAN | 32165592 | 101-1 | 6/4/2022 | -- | -- | -- | $ 3,600 | $ 3,600 | |
| AYERS, THOMAS | 32165600 | 115-1 | 6/6/2022 | -- | -- | -- | $ 38,403 | $ 38,403 | |
| BRIGGS, ROBERT | 32165610 | 116-1 | 6/6/2022 | -- | -- | -- | $ 2,500 | $ 2,500 | |
| WALKER, WILLIAM | 32165621 | 117-1 | 6/6/2022 | -- | -- | -- | $ 500 | $ 500 | |
| DEWOLF, HARRY | 32165624 | 119-1 | 6/6/2022 | -- | -- | -- | $ 83,892 | $ 83,892 | Yes |
| SCHMIDT, MICHAEL | 32165625 | 118-1 | 6/6/2022 | -- | -- | -- | $ 99,199 | $ 99,199 | |
| PALL, NICHOLAS | 32165628 | 122-1 | 6/6/2022 | -- | -- | -- | $ 475 | $ 475 | |
| DOGGETT, TYLER [DOGGETT, CHRISTOPHER TY | 32165629 | 123-1 | 6/6/2022 | -- | $ 1,997 | -- | $ - | $ 1,997 | Yes |
| LAUDER JR., ROBERT ENRIGHT | 32165630 | 120-1 | 6/6/2022 | -- | -- | -- | $ 1,150 | $ 1,150 | |
| ROBERTS, KELLY [BRILL, KELLY] | 32165631 | 121-1 | 6/6/2022 | -- | -- | -- | $ - | $ - | TBD |
| ASTRELLA, JR., TRIN | 32165633 | 124-1 | 6/7/2022 | -- | -- | -- | $ 1,500 | $ 1,500 | Yes |
| ZIPPERMAN, STEVE | 32165638 | 125-1 | 6/7/2022 | -- | -- | -- | $ 550 | $ 550 | Yes |
| PRICE, PAUL | 32165639 | 126-1 | 6/7/2022 | -- | -- | -- | $ 401 | $ 401 | |
| SEAVEY, MATTHEW | 32165640 | 127-1 | 6/7/2022 | -- | -- | -- | $ 80,000 | $ 80,000 | Yes |
| SMITH, CHRISTOPHER [SMITH, CHRIS] | 32165645 | 128-1 | 6/7/2022 | -- | -- | -- | $ 1,000 | $ 1,000 | |
| BRUSSEAU, MICHAEL | 32165646 | 129-1 | 6/7/2022 | -- | -- | -- | $ 9,900 | $ 9,900 | Yes |
| PETERSON, STEVEN C | 32165650 | 130-1 | 6/8/2022 | -- | -- | -- | $ 12,000 | $ 12,000 | Yes |
| SHPAK, IGOR | 32165652 | 131-1 | 6/8/2022 | -- | -- | -- | $ 3,900 | $ 3,900 | Yes |
| RAUSCH, ANDREA [RAUSCH, ANDI] | 32165667 | 132-1 | 6/8/2022 | -- | -- | -- | $ 68,800 | $ 68,800 | Yes |
| RAUSCH, JEFF | 32165668 | 133-1 | 6/8/2022 | -- | -- | -- | $ 60,000 | $ 60,000 | Yes |
| TUCKER, MICHAEL LYNDEN | 32165669 | 134-1 | 6/8/2022 | -- | -- | -- | $ 1,237 | $ 1,237 | |
| TUCKER, GERALDINE | 32165671 | 135-1 | 6/8/2022 | -- | -- | -- | $ 499 | $ 499 | |

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|--------------------------------|
| HUFFMAN, BRAD | 32165677 | 136-1 | 6/8/2022 | -- | -- | -- | $ 500 | $ 500 | Yes |
| RAVEN, GREG | 32165679 | 137-1 | 6/9/2022 | -- | -- | -- | $ 11,975 | $ 11,975 | Yes |
| VAN LANDINGHAM, FRANCIS | 32165691 | 138-1 | 6/9/2022 | -- | -- | -- | $ 600,000 | $ 600,000 | Yes |
| WELITZKIN, MARK | 32165699 | 139-1 | 6/9/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| CUTAIA, MARY | 32165701 | 140-1 | 6/9/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| ARMSCOR PRECISION INTERNATIONAL | 32165702 | 141-1 | 6/10/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | |
| EVANS, MARAYA TAMARA | 32165798 | 142-1 | 6/13/2022 | -- | -- | -- | $ 4,800 | $ 4,800 | Yes |
| EVANS, CHARLES | 32165800 | 143-1 | 6/13/2022 | -- | -- | -- | $ 4,800 | $ 4,800 | Yes |
| LITTLE, JACK KIM | 32165811 | 144-1 | 6/14/2022 | -- | -- | -- | $ 1,249 | $ 1,249 | Yes |
| ENINGER, LARRY | 32165822 | 145-1 | 6/14/2022 | -- | -- | -- | $ 650 | $ 650 | |
| FORMAN, PATRICIA | 32165827 | 146-1 | 6/14/2022 | -- | -- | -- | $ - | $ - | Yes |
| FORMAN, PATRICIA | 32165829 | 146-2 | 6/14/2022 | -- | -- | -- | $ 3,342 | $ 3,342 | |
| OLSON, GREGGORY [OLSON, GREGG M] | 32166809 | 147-1 | 6/15/2022 | -- | -- | -- | $ 18,761 | $ 18,761 | |
| GILLOGLY, RICHARD & THERESA | 32166868 | 148-1 | 6/16/2022 | -- | -- | -- | $ 24,000 | $ 24,000 | |
| BOLANOS, EDGAR R. | 32169871 | 6-2 | 6/17/2022 | -- | -- | -- | $ 250,000 | $ 250,000 | Yes |
| DESLAURIERS, MICHEL | 32169991 | 82-2 | 6/18/2022 | -- | -- | -- | $ 4,410 | $ 4,410 | Yes |
| CRAWFORD, MICHAEL | 32169992 | 149-1 | 6/19/2022 | -- | -- | -- | $ 250 | $ 250 | |
| STATE OF NEVADA DEPARTMENT OF TAXATIO | 32169999 | 150-1 | 6/20/2022 | -- | $ 153,009 | -- | $ 3,884 | $ 156,893 | Yes |
| LEAFE, GREGORY A. | 32170001 | 151-1 | 6/20/2022 | -- | -- | -- | $ 250,000 | $ 250,000 | Yes |
| DENSMORE, DARRELL | 32170002 | 152-1 | 6/21/2022 | -- | -- | -- | $ 840 | $ 840 | Yes |
| PASSARETTI, PATRICIA M. | 32170003 | 153-1 | 6/21/2022 | -- | -- | -- | $ 60,000 | $ 60,000 | Yes |
| FRONT SIGHT MANAGEMENT LLC | 32170005 | 154-1 | 6/21/2022 | -- | -- | -- | $ 104,000 | $ 104,000 | Yes |
| CARR, STEVEN | 32170077 | 156-1 | 6/21/2022 | -- | -- | -- | $ 16,361 | $ 16,361 | |

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| DAWKINS, GARY | 32170078 | 157-1 | 6/21/2022 | -- | -- | -- | $ 1,500 | $ 1,500 | |
| MECKLENBURG, JOHN | 32170079 | 155-1 | 6/21/2022 | -- | $ 1,397 | -- | $ 1,397 | $ 2,794 | Yes |
| ENGLAND, PAUL | 32170081 | 158-1 | 6/21/2022 | -- | -- | -- | $ 500 | $ 500 | |
| ROSEN, ROBERT | 32170083 | 159-1 | 6/21/2022 | -- | -- | -- | $ 77,750 | $ 77,750 | Yes |
| KAUFFMAN, MICHAEL P [KAUFFMAN, MIKE] | 32170084 | 160-1 | 6/21/2022 | -- | -- | -- | $ 25,000 | $ 25,000 | Yes |
| PAHRUMP VALLEY DISPOSAL INC. | 32170090 | 161-1 | 6/22/2022 | -- | -- | -- | $ 1,208 | $ 1,208 | |
| STONE, ROBERT | 32170092 | 164-1 | 6/22/2022 | -- | -- | -- | $ 7,000 | $ 7,000 | |
| DOUTY, CHRISTOPHER [DOUTY, KRISTIN S.; DO | 32170093 | 163-1 | 6/22/2022 | -- | -- | -- | $ 152,435 | $ 152,435 | |
| JOE'S SANITATION | 32170094 | 162-1 | 6/22/2022 | -- | -- | -- | $ 2,452 | $ 2,452 | |
| WOODFORD, WILLIAM HENRY | 32170099 | 165-1 | 6/16/2022 | -- | -- | -- | $ 7,979 | $ 7,979 | |
| STETSON, MARK | 32170100 | 166-1 | 6/22/2022 | -- | -- | -- | $ 4,272 | $ 4,272 | |
| LEWIS, JOHN G [LEWIS, DANIEL J] | 32170191 | 167-1 | 6/22/2022 | -- | -- | -- | $ 2,500 | $ 2,500 | |
| FOLMER, DAVID A | 32170193 | 168-1 | 6/23/2022 | -- | -- | -- | $ 400 | $ 400 | Yes |
| LOGIE, BRUCE | 32170194 | 169-1 | 6/23/2022 | -- | -- | -- | $ 422,809 | $ 422,809 | Yes |
| BOYADJIEFF, KIRIL P. | 32170205 | 170-1 | 6/23/2022 | -- | -- | -- | $ 20,000 | $ 20,000 | Yes |
| WAGGONER, ROBERT [WAGGONER, ROB] | 32170206 | 171-1 | 6/23/2022 | -- | -- | -- | $ 21,646 | $ 21,646 | Yes |
| WAGGONER, ROBERT [WAGGONER, ROB] | 32170207 | 171-2 | 6/23/2022 | -- | -- | -- | $ 21,646 | $ 21,646 | Yes |
| AMIN TALATI WASSERMAN | 32170211 | 172-1 | 6/24/2022 | -- | -- | -- | $ 82,380 | $ 82,380 | |
| JOHNSON, TIMOTHY | 32170216 | 173-1 | 6/27/2022 | -- | -- | -- | $ - | $ - | TBD |
| LEWIS, THOMAS M. | 32170257 | 175-1 | 06/24/2022 | -- | -- | -- | $ 600 | $ 600 | |
| LENNON, JOHN J. | 32170258 | 174-1 | 06/28/2022 | -- | -- | -- | $ 3,000 | $ 3,000 | Yes |
| ADAMS, TIMOTHY SR | 32170259 | 176-1 | 06/28/2022 | -- | -- | -- | $ 3,213 | $ 3,213 | |
| OLTMANN, MICHAEL | 32177694 | 177-1 | 07/05/2022 | -- | -- | -- | $ 1,976 | $ 1,976 | Yes |

SUBJECT TO AMENDMENT

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| FAULK, RICHARD | 32177695 | 178-1 | 07/05/2022 | -- | -- | -- | $ 12,000 | $ 12,000 | Yes |
| DEPARTMENT OF TREASURY - INTERNAL REVE | 32178617 | 179-1 | 07/06/2022 | -- | $ 500 | -- | $ 160,529 | $ 161,029 | |
| MOORE, LILLIAN | 32180170 | 180-1 | 07/11/2022 | -- | $ 1,997 | -- | $ - | $ 1,997 | Yes |
| MOORE, JEFFREY | 32180171 | 181-1 | 07/11/2022 | -- | $ 1,997 | -- | $ - | $ 1,997 | Yes |
| TRUBEE, MICHAEL | 32180172 | 182-1 | 07/12/2022 | -- | -- | -- | $ 800 | $ 800 | Yes |
| MORRISON, ROBERT [MORRISON, BOB] | 32180173 | 183-1 | 07/12/2022 | -- | -- | -- | $ 13,309,899 | $ 13,309,899 | Yes |
| MORRISON, BIRDIE CAROL [MORRISON, CARO | 32180174 | 184-1 | 07/12/2022 | -- | -- | -- | $ 13,110,084 | $ 13,110,084 | Yes |
| WILLIAMS SCOTSMAN INC [ACTON, MODSPAC | 32180269 | 185-1 | 07/12/2022 | -- | -- | -- | $ 728 | $ 728 | |
| MCCLOUD, JEFFREY | 32180352 | 186-1 | 07/12/2022 | -- | -- | -- | $ 1,995 | $ 1,995 | |
| MCCLOUD, KATHY | 32180355 | 187-1 | 07/12/2022 | -- | -- | -- | $ 104,000 | $ 104,000 | Yes |
| FINKELSEN, KENT | 32180357 | 188-1 | 07/12/2022 | -- | -- | -- | $ 19,960 | $ 19,960 | |
| LACY, RODERICK | 32181011 | 189-1 | 07/14/2022 | -- | -- | -- | $ 48,000 | $ 48,000 | |
| CASTAGNO, JOHN | 32183360 | 190-1 | 07/16/2022 | -- | -- | -- | $ 27,301,777 | $ 27,301,777 | Yes |
| SPEIGHT, KEVIN | 32183361 | 191-1 | 07/17/2022 | -- | -- | -- | $ - | $ - | TBD |
| REID, ROGER | 32184018 | 192-1 | 07/18/2022 | -- | -- | -- | $ 7,950 | $ 7,950 | |
| PETERSEN, GUY | 32184024 | 193-1 | 07/18/2022 | -- | -- | -- | $ 108,079 | $ 108,079 | Yes |
| MATTICK, JENNETTA | 32184028 | 194-1 | 07/18/2022 | -- | -- | -- | $ - | $ - | TBD |
| DICKERSON, KIMBERLY KLEIN | 32354221 | 195-1 | 07/19/2022 | -- | -- | -- | $ - | $ - | TBD |
| CALL & JENSEN LAW | 32354223 | 196-1 | 07/22/2022 | -- | -- | -- | $ 77,873 | $ 77,873 | |
| O'REILLY, TERENCE | 32354225 | 197-1 | 07/25/2022 | -- | -- | -- | $ 50,000 | $ 50,000 | Yes |
| M2 EPC, INC. DBA M2 ENGINEERING PROCURE | 32354743 | 198-1 | 07/26/2022 | -- | -- | $ 146,993 | $ - | $ 146,993 | |
| SAMPSON, ERIC H | 32400668 | 199-1 | 07/26/2022 | -- | -- | -- | $ 1,912,570 | $ 1,912,570 | Yes |
| SAMPSON, ERIC H | 32400803 | 199-2 | 07/26/2022 | -- | -- | -- | $ 1,912,573 | $ 1,912,573 | Yes |

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| RAVEN, GREG | 32400804 | 200-1 | 07/27/2022 | -- | -- | -- | $ 12,042 | $ 12,042 | Yes |
| MCKENZIE, RYAN | 32401260 | 201-1 | 7/28/2022 | -- | -- | -- | $ - | $ - | TBD |
| TARDY, CATHERINE | 32403864 | 204-1 | 7/28/2022 | -- | $ 3,350 | -- | $ 78,863 | $ 82,213 | Yes |
| BERKSHIRE, WILLIAM | 32403875 | 205-1 | 7/28/2022 | -- | -- | -- | $ 449 | $ 449 | |
| KENSEL, BRIAN | 32403878 | 207-1 | 7/28/2022 | -- | -- | -- | $ 419 | $ 419 | Yes |
| TINSLEY, RICK | 32403883 | 208-1 | 7/28/2022 | -- | -- | -- | $ 1,653 | $ 1,653 | |
| TRIPP, ISAAC | 32403885 | 209-1 | 7/28/2022 | -- | -- | -- | $ 1,454 | $ 1,454 | |
| TALLMAN, STEVE | 32403888 | 211-1 | 7/28/2022 | -- | -- | -- | $ 6,000 | $ 6,000 | |
| ARRINGTON, STEPHEN | 32403893 | 210-1 | 7/28/2022 | -- | -- | -- | $ 23,933 | $ 23,933 | |
| CONFIDENTIAL CREDITOR | 32403897 | 206-1 | 7/28/2022 | -- | -- | -- | $ 250 | $ 250 | Yes |
| PARKER, THOMAS BRENT | 32403906 | 203-1 | 7/28/2022 | -- | -- | -- | $ 2,340 | $ 2,340 | |
| SHERLOCK, TIMOTHY | 32403914 | 202-1 | 7/28/2022 | -- | -- | -- | $ 1,997 | $ 1,997 | Yes |
| MANTIN, RICHARD | 32408239 | 212-1 | 7/29/2022 | -- | -- | -- | $ 34,689 | $ 34,689 | |
| FECZKO, WILLIAM | 32408244 | 213-1 | 8/1/2022 | -- | -- | -- | $ 48,000 | $ 48,000 | |
| FECZKO, WILLIAM | 32408250 | 214-1 | 8/1/2022 | -- | -- | -- | $ - | $ - | TBD |
| Dean L. Scott | 32408253 | 215-1 | 8/1/2022 | -- | -- | -- | $ - | $ - | TBD |
| Dean L. Scott | 32408258 | 216-1 | 8/1/2022 | -- | -- | -- | $ - | $ - | TBD |
| HARRISS, JAMES | 32408260 | 217-1 | 8/1/2022 | -- | $ 625 | -- | $ 360,066 | $ 360,691 | Yes |
| RORE, JAMES | 32408264 | 218-1 | 8/1/2022 | -- | -- | -- | $ 9,400 | $ 9,400 | Yes |
| KUAN, RICHARD | 32409506 | 219-1 | 8/2/2022 | -- | -- | -- | $ - | $ - | TBD |
| Ward Stringham | 32409512 | 220-1 | 8/2/2022 | -- | -- | -- | $ 50,000 | $ 50,000 | Yes |
| HARRISS, ALLYSON | 32409522 | 221-1 | 8/2/2022 | -- | -- | -- | $ 60,800 | $ 60,800 | Yes |
| GIBLIN, MARK | 32409525 | 222-1 | 7/25/2022 | -- | -- | -- | $ 18,831,863 | $ 18,831,863 | Yes |

SUBJECT TO AMENDMENT

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| EVANS, GARY | 32409532 | 223-1 | 8/2/2022 | -- | -- | -- | $ 9,500 | $ 9,500 | Yes |
| DARNEY, JOHN E | 32409540 | 224-1 | 8/2/2022 | -- | -- | -- | $ 250 | $ 250 | |
| VANASSE, STEVEN | 32409546 | 225-1 | 8/2/2022 | -- | -- | -- | $ - | $ - | TBD |
| NEIDICH, ROBERT | 32410595 | 227-1 | 8/3/2022 | -- | -- | -- | $ 228,687 | $ 228,687 | Yes |
| HODGSON, DAVID A | 32412969 | 226-1 | 8/3/2022 | -- | -- | -- | $ 500 | $ 500 | Yes |
| FOX, WILLIAM [FOX, ANDY] | 32412972 | 228-1 | 8/4/2022 | -- | $ 1,000 | -- | $ - | $ 1,000 | Yes |
| FOX, LAURIE | 32412975 | 229-1 | 8/4/2022 | -- | $ 1,000 | -- | $ - | $ 1,000 | Yes |
| RAGDE, JORGE | 32412980 | 230-1 | 8/4/2022 | -- | -- | -- | $ 22,000 | $ 22,000 | Yes |
| RICHARDSON, JAMIE R | 32412988 | 231-1 | 8/4/2022 | -- | -- | -- | $ 3,000 | $ 3,000 | |
| MEZA, MICHAEL | 32412996 | 232-1 | 8/4/2022 | -- | -- | -- | $ - | $ - | TBD |
| HUGHES, PATRICK JOSEPH | 32412998 | 233-1 | 8/4/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| BURNETTE, OLLEN | 32413006 | 234-1 | 8/4/2022 | -- | -- | -- | $ 100,000 | $ 100,000 | Yes |
| MICHAEL MEACHER DBA BANKGROUP FINANC | 32413009 | 235-1 | 8/5/2022 | -- | -- | $ 3,300,000 | $ - | $ 3,300,000 | Yes |
| MORRISON, TACY | 32413015 | 236-1 | 8/5/2022 | -- | -- | -- | $ 54,910 | $ 54,910 | Yes |
| KEESE, JOHN | 32413019 | 237-1 | 8/5/2022 | -- | -- | -- | $ - | $ - | TBD |
| JOHNSON, KENNETH E. III | 32413027 | 238-1 | 8/5/2022 | -- | $ 3,921 | -- | $ 1,121,435,079 | $ 1,121,439,000 | Yes |
| CASAVANT, MATTHEW | 32413029 | 239-1 | 8/6/2022 | -- | -- | -- | $ 108,785 | $ 108,785 | Yes |
| CANCIGLIA, WILLIAM R [CANCIGLIA, BILL] | 32413030 | 240-1 | 8/6/2022 | -- | -- | -- | $ 4,763 | $ 4,763 | |
| EVANSIC, DANIELLE R | 32413035 | 241-1 | 8/6/2022 | -- | -- | -- | $ 6,270 | $ 6,270 | Yes |
| WADE, VALERIE ANN | 32413038 | 242-1 | 8/7/2022 | -- | -- | -- | $ 14,940 | $ 14,940 | Yes |
| SCOTT, TIMOTHY GRAHAM | 32413039 | 243-1 | 8/7/2022 | -- | -- | -- | $ 2,100 | $ 2,100 | |
| STRECK, DAVID | 32413041 | 244-1 | 8/7/2022 | -- | -- | -- | $ 280,760 | $ 280,760 | Yes |
| STRECK, KATHIE | 32413044 | 245-1 | 8/7/2022 | -- | -- | -- | $ 49,346 | $ 49,346 | Yes |

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| STRECK, JOHN L | 32413045 | 246-1 | 8/7/2022 | -- | -- | -- | $ 7,693 | $ 7,693 | Yes |
| STRECK, EMMA | 32413047 | 247-1 | 8/7/2022 | -- | -- | -- | $ 2,499 | $ 2,499 | Yes |
| WOOD, LANCE F | 32413048 | 248-1 | 8/7/2022 | -- | -- | -- | $ 4,227,400 | $ 4,227,400 | Yes |
| GRANITE, LAWRENCE | 32413050 | 249-1 | 8/7/2022 | -- | -- | -- | $ 2,500 | $ 2,500 | |
| GRANITE, LUCIA | 32413051 | 250-1 | 8/7/2022 | -- | -- | -- | $ 2,500 | $ 2,500 | Yes |
| ROE, EARL | 32413053 | 251-1 | 8/7/2022 | -- | -- | -- | $ 4,000 | $ 4,000 | |
| STRECK, LUDWIG | 32413054 | 252-1 | 8/7/2022 | -- | -- | -- | $ 8,000 | $ 8,000 | Yes |
| JELLISON, MATTHEW | 32413056 | 253-1 | 8/8/2022 | -- | -- | -- | $ 13,275 | $ 13,275 | |
| SAVAGE, ANGELA | 32413057 | 254-1 | 8/8/2022 | -- | $ 1,800 | -- | $ 3,509 | $ 5,309 | Yes |
| LEWIS, MATTHEW | 32413058 | 255-1 | 8/8/2022 | -- | -- | -- | $ 87,070 | $ 87,070 | Yes |
| FAN, AMELIA | 32413060 | 256-1 | 8/8/2022 | -- | -- | -- | $ 737,000 | $ 737,000 | Yes |
| FAN, SEBASTIAN | 32413061 | 257-1 | 8/8/2022 | -- | -- | -- | $ 737,000 | $ 737,000 | Yes |
| FAN, KEN | 32413245 | 258-1 | 8/8/2022 | -- | -- | -- | $ - | $ - | TBD |
| KRICK, ALICIA | 32413246 | 259-1 | 8/8/2022 | -- | -- | -- | $ 1,100 | $ 1,100 | Yes |
| BIRCHFIELD, WILLIAM | 32413247 | 260-1 | 8/8/2022 | -- | -- | -- | $ - | $ - | TBD |
| WITT, JERRY | 32413250 | 261-1 | 8/8/2022 | -- | -- | -- | $ 180,502 | $ 180,502 | Yes |
| BRANSON, UZZELL S. IV [BRANSON, UZZELL] | 32413253 | 262-1 | 8/8/2022 | -- | $ 3,350 | -- | $ 11,650 | $ 15,000 | Yes |
| JONES, MICHAEL | 32413255 | 263-1 | 8/8/2022 | -- | -- | -- | $ 43,520 | $ 43,520 | Yes |
| BOSSACOMA, ANSELM | 32413257 | 264-1 | 8/8/2022 | -- | -- | -- | $ 2,491 | $ 2,491 | |
| KRYSTOF, GARY | 32413263 | 265-1 | 8/8/2022 | -- | -- | -- | $ 12,234 | $ 12,234 | Yes |
| WEBB, RONALD R | 32413265 | 266-1 | 8/8/2022 | -- | $ 3,300 | -- | $ 11,700 | $ 15,000 | Yes |
| BUCHANAN, JARROD | 32413277 | 267-1 | 8/8/2022 | -- | -- | -- | $ 500 | $ 500 | Yes |
| BRANSON III, UZZELL S. | 32413286 | 268-1 | 8/8/2022 | -- | -- | -- | $ 900 | $ 900 | Yes |

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| PAVEY, BRIAN | 32413287 | 270-1 | 8/8/2022 | -- | -- | -- | $ 58,135 | $ 58,135 | Yes |
| GIFT, TIMOTHY JOHN | 32413291 | 269-1 | 8/8/2022 | -- | -- | -- | $ 5,372 | $ 5,372 | |
| STEEL, MICHAEL | 32413295 | 271-1 | 8/8/2022 | -- | -- | -- | $ 1,350,781 | $ 1,350,781 | Yes |
| SGARLATTI, ANTHONY | 32413298 | 273-1 | 8/8/2022 | -- | -- | -- | $ 32,890 | $ 32,890 | Yes |
| LOCKITSKI, MATTHEW | 32413304 | 272-1 | 8/8/2022 | -- | -- | -- | $ 10,000 | $ 10,000 | Yes |
| BRUBECK, DAVID | 32413306 | 274-1 | 8/8/2022 | -- | -- | -- | $ 997 | $ 997 | Yes |
| MONTESANO, MIKE | 32413315 | 275-1 | 8/8/2022 | -- | -- | -- | $ 1,614,500 | $ 1,614,500 | Yes |
| KEHOE, TY | 32413321 | 276-1 | 8/8/2022 | -- | -- | -- | $ 31,388 | $ 31,388 | Yes |
| COLLINGS, GRAHAM | 32413324 | 277-1 | 8/8/2022 | -- | -- | -- | $ 1,997 | $ 1,997 | Yes |
| Ty Kehoe | 32413348 | 276-2 | 8/8/2022 | -- | -- | -- | $ - | $ - | TBD |
| KEHOE, STEPHEN R | 32413351 | 280-2 | 8/8/2022 | -- | -- | -- | $ - | $ - | TBD |
| Stephen R Kehoe | 32413352 | 280-1 | 8/8/2022 | -- | -- | -- | $ - | $ - | TBD |
| C/O GARMAN TURNER GORDON | 32413355 | 279-1 | 8/8/2022 | -- | -- | -- | $ 2,364,926 | $ 2,364,926 | Agreed to subordinate |
| PIAZZA, IGNATIUS | 32413360 | 278-1 | 8/8/2022 | -- | -- | -- | $ - | $ - | Agreed to subordinate |
| FARROW, ROXANNE | 32413498 | 281-1 | 8/8/2022 | -- | $ 3,350 | -- | $ 250 | $ 3,600 | Yes |
| TAYLOR, BRIAN NEAL | 32413501 | 282-1 | 8/8/2022 | -- | -- | -- | $ 1,497 | $ 1,497 | Yes |
| WEBB, DAVID | 32413502 | 283-1 | 8/8/2022 | -- | $ 3,350 | -- | $ 30,245 | $ 33,595 | Yes |
| LAS VEGAS DEVELOPMENT FUND, LLC | 32413503 | 284-1 | 8/8/2022 | -- | -- | $ 11,655,706 | $ - | $ 11,655,706 | Yes |
| WEBB, RANDALL R | 32413504 | 285-1 | 8/8/2022 | $ 3,350 | -- | -- | $ 46,650 | $ 46,650 | Yes |
| AHLUWALIA, AMARJIT | 32413506 | 286-1 | 8/8/2022 | -- | -- | -- | $ 14,797 | $ 14,797 | |
| LEWIS, RILEY CONNOR | 32413508 | 287-1 | 8/8/2022 | -- | -- | -- | $ 1,000 | $ 1,000 | |
| BURK, THOMAS | 32413510 | 289-1 | 8/8/2022 | -- | -- | -- | $ 38,697 | $ 38,697 | |
| LEWIS, MELISSA RAMISO | 32413512 | 288-1 | 8/8/2022 | -- | -- | -- | $ 15,000 | $ 15,000 | Yes |

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| OTTEN, KORTNEY | 32413514 | 290-1 | 8/8/2022 | -- | -- | -- | $ 15,000 | $ 15,000 | Yes |
| GILMORE, MICHAEL | 32413518 | 291-1 | 8/8/2022 | -- | -- | -- | $ 9,307 | $ 9,307 | Yes |
| LEWIS, LOGAN MITCHELL | 32413520 | 292-1 | 8/8/2022 | -- | -- | -- | $ 60,000 | $ 60,000 | Yes |
| BONNEY, DOUGLAS R | 32413522 | 293-1 | 8/8/2022 | -- | -- | -- | $ 70,000 | $ 70,000 | Yes |
| GRAHAM, JORDAN | 32413529 | 294-1 | 8/8/2022 | -- | $ 3,350 | -- | $ 101,295 | $ 104,645 | Yes |
| GREENWOOD, KENNETH | 32413531 | 295-1 | 8/8/2022 | -- | -- | -- | $ 1,500 | $ 1,500 | Yes |
| John J. Smith | 32414961 | 297-1 | 8/11/2022 | -- | -- | -- | $ 3,700 | $ 3,700 | Yes |
| Brent B Adams | 32414966 | 296-1 | 8/11/2022 | -- | -- | -- | $ 1,345 | $ 1,345 | Yes |
| Amberlyn Gil | 32571241 | 301-1 | 8/15/2022 | -- | -- | -- | $ 250 | $ 250 | Yes |
| Jennifer Gil | 32571244 | 304-1 | 8/15/2022 | -- | -- | -- | $ 250 | $ 250 | Yes |
| David Gil | 32571259 | 300-1 | 8/15/2022 | -- | -- | -- | $ 250 | $ 250 | Yes |
| Erin Gil | 32571264 | 302-1 | 8/15/2022 | -- | -- | -- | $ 250 | $ 250 | Yes |
| Scott Hoffman | 32571272 | 303-1 | 8/15/2022 | -- | -- | -- | $ 250 | $ 250 | Yes |
| Ruland Gil | 32571286 | 299-1 | 8/15/2022 | -- | -- | -- | $ 250 | $ 250 | Yes |
| Leonard Haas | 32571291 | 298-1 | 8/15/2022 | -- | -- | -- | $ 3,786 | $ 3,786 | Yes |
| Carl Lombardo | 32723760 | 306-1 | 8/16/2022 | -- | -- | -- | $ - | $ - | Yes |
| Marvin Leslie Newcomb II | 32723768 | 305-1 | 8/16/2022 | -- | -- | -- | $ 1,500 | $ 1,500 | Yes |
| William Sillanpaa | 32723770 | 307-1 | 8/16/2022 | -- | -- | -- | $ - | $ - | Yes |
| Neal Schweber | 32733837 | 310-1 | 8/19/2022 | -- | -- | -- | $ - | $ - | Yes |
| Dennis and Leslie Lensegrav | 32733839 | 309-1 | 8/18/2022 | -- | -- | -- | $ - | $ - | Yes |
| William Ray Holley | 32733840 | 308-1 | 8/18/2022 | -- | -- | -- | $ 4,500 | $ 4,500 | Yes |
| EDWARDS, MICHAEL E. JR. | 32733975 | 312-1 | 8/20/2022 | -- | -- | -- | 61,000 | $ 61,000 | Yes |
| EDWARDS, STACEY A [FRONGILLO, STACEY A] | 32733971 | 311-1 | 8/20/2022 | -- | -- | -- | 650,000 | $ 650,000 | Yes |

*SUBJECT TO AMENDMENT*

| Name | Claim ID | Claim Number | Date Filed | Administrative | Priority | Secured | General Unsecured | Total Claims | Marked For Objection / Comment |
|------|----------|--------------|------------|----------------|----------|---------|-------------------|--------------|-------------------------------|
| IANUCCI, DEBRA | 32733981 | 313-1 | 8/22/2022 | -- | -- | -- | 227,393 | $ 227,393 | Yes |
| IANUCCI, ROBERT | 32733983 | 314-1 | 8/22/2022 | -- | -- | -- | 622,994 | $ 622,994 | Yes |
| GODWIN, JOHN | 32773516 | 315-1 | 8/24/2022 | -- | -- | -- | 3,299 | $ 3,299 | |
| COLLINS, MARK | 32773518 | 316-1 | 8/25/2022 | -- | -- | -- | 10,000 | $ 10,000 | |
| HOCHSTRAT, KEVIN | 32773519 | 317-1 | 8/25/2022 | -- | -- | -- | 1,500 | $ 1,500 | |
| DOUTT, MELINDA | 32773509 | 318-1 | 8/26/2022 | -- | -- | -- | 500 | $ 500 | |
| GRIFFIN, MATTHEW | 32773520 | 319-1 | 8/27/2022 | -- | -- | -- | 997 | $ 997 | |
| CONNORS, RAYMOND W | 32779166 | 322-1 | 8/29/2022 | -- | -- | -- | 60,000 | $ 60,000 | Yes |
| STUART, ROBERT | 32773521 | 320-1 | 8/31/2022 | -- | -- | -- | 3,789 | $ 3,789 | |
| WAHLQUIST, JOHN | 32785754 | 331-1 | 9/6/2022 | -- | -- | -- | 6,000 | $ 6,000 | |
| HILLMER, THOMAS | 32779165 | 321-1 | 9/7/2022 | -- | -- | -- | 15,600 | $ 15,600 | Yes |
| ROBERTS, KENNETH [JESARACA LP] | 32779178 | 324-1 | 9/7/2022 | -- | -- | -- | 72,854,224,500 | $ 72,854,224,500 | Yes |
| ROBERTS, KENNETH [JESARACA LP] | 32779183 | 326-1 | 9/7/2022 | -- | -- | -- | 250,000,000 | $ 250,000,000 | Yes |
| ROBERTS, KENNETH [JESARACA LP] | 32779187 | 328-1 | 9/7/2022 | -- | -- | -- | 527,000 | $ 527,000 | Yes |
| ROBERTS, KENNETH [JESARACA LP] | 32779186 | 327-1 | 9/7/2022 | -- | -- | -- | 42,700 | $ 42,700 | Yes |
| ROBERTS, KENNETH [JESARACA LP] | 32779181 | 325-1 | 9/7/2022 | -- | -- | -- | 23,256 | $ 23,256 | Yes |
| ROBERTS, KENNETH [JESARACA LP] | 32779177 | 323-1 | 9/7/2022 | -- | -- | -- | 6,000 | $ 6,000 | Yes |
| FORTUNE, MARK | 32784867 | 330-1 | 9/10/2022 | -- | -- | -- | 2,000 | $ 2,000 | |
| MOHR, BETH A. | 32785179 | 329-2 | 9/13/2022 | -- | -- | -- | 7,200 | $ 7,200 | |
| SHUBIN, ANDREA | 32788602 | 332-1 | 9/21/2022 | -- | -- | -- | 200,000 | $ 200,000 | Yes |

# EXHIBIT B



# MEMBERSHIP TERMS

## Front Sight Management, LLC

**SEPTEMBER 9, 2022**

## Summary of Membership Terms

Nevada PF, LLC dba PrairieFire ("PrairieFire") is pleased to support the first amended plan of reorganization (the "Plan") filed by Front Sight Management, LLC ("Front Sight"). Upon confirmation of the Plan (expected to be at the end of November 2022), PrairieFire will become the 100% equity holder of Front Sight and Front Sight will operate under the "PrairieFire Nevada" name. To understand PrairieFire's goal for the integration of Front Sight into PrairieFire's business and its impact on members, it is critical to understand PrairieFire's long-term vision and operational plan.

To sum up PrairieFire's intent in one sentence: **PrairieFire wants to make the current Front Sight location the pre-eminent shooting destination in the world.**

PraireFire plans significant financial investment in the Front Sight facility. In addition to the existing ranges, PrairieFire's plan is to develop shooting courses that do not exist outside of elite military training installations. Its build-out plans also include long-range and helo shooting experiences.

PrairieFire's Q Academy training curriculum is deeply rooted in the special operations training of the elite military and adapted for civilians. PrairieFire believes that its competitions and championships will define the shooting industry, as well as provide a destination for industry leaders to connect with members.

The bedrock of PrairieFire's vision is to embrace the existing Front Sight membership and welcome them into PrairieFire. To date, PrairieFire has studied and evaluated the large Front Sight membership from a distance. PrairieFire recognizes that the numerous members were each attracted to Front Sight for many different reasons and motivations. In PrairieFire's membership terms set forth below, it has done its best to address those known motivations and mirror the various existing membership groups in terms adapted for the PrairieFire vision and offerings.

## Who is PrairieFire?

PrairieFire is a new company led by a team of former elite military operators, law-enforcement leaders, and competitive shooters elevating our passion to energize and better the 2A experience and industry. Its service to our country has shaped our collective perspective and approach to both life and shooting - and instilled us with the principles we live by. We are honored to live in the greatest country in the world. Most importantly, we cherish honesty and directness, and treat everyone in the manner we hope to be treated.

To learn more about us, please visit our new website at *www.PrairieFire.com*.

## Long Term Vision

PrairieFire's long-term vision is simple: Evolve the current Front Sight location into the world's pre-eminent shooting destination experience. It is also building a similar destination experience in Texas - in Williamson County just north of Austin.

PrairieFire's vision is to provide the 2A community with analogous experiences achieved in other industries. For families, the pinnacle is visiting Disney World. In golf, it is a trip to Pebble Beach or Augusta. For NASCAR, it is the week of fun and activities at Daytona or Charlotte Speedway. For Formula One, it is the experience of Monte Carlo. For football, it is the Super Bowl and the experiences in the days leading up to the big game.

Every great sport has its special place - shooting does not. PrairieFire's intent is to establish PrairieFire Nevada as that magical place for shooters.

# Key Components of the PrairieFire Vision

The foundational components of the PrairieFire vision are as follows:

### Shooter's Experience

We strive to provide each member with awe-inspiring experiences that leave them smiling and counting the time to their next return visit.

### Q Academy

Our comprehensive training curriculum is rooted in the best practices of military special operations training, and adapted for civilians with certification upon mastery of each level.

### Basic Range Shooting Repetitions & Instruction

We plan to continue (our opinion of) Front Sight's primary offering of shooting and instructions across a large number of flat ranges.

### Shooting Courses

In the military, our experiences and training went well beyond flat ranges. We plan to transform a significant portion of the Front Sight terrain into these experiential assets.

### The Home of RANK

RANK is our patented scoring system to assess an individual's shooting ability. RANK will be the foundation for our championships, our training curriculum, and most importantly, fun. To date, the reception from the elite shooting world and law enforcement has been tremendous. Our first RANK Championship, offering $100,000 prize money, is on October 28, 2022 in Williamson County, Texas.

### Championships

The 2A community is currently among the most underserved groups of people. Although more than half of Americans own a gun, we do not have marquee sports championship events that unite our community. PrairieFire plans to change that.

We recently announced the $1 Million 2023 PrairieFire Rank Championship with the largest cash prize pool ever awarded in the industry. Our plan is to host this groundbreaking event in Pahrump, Nevada.

Our 2023 calendar of competitions also includes the $1 Million 2023 PrairieFire SWAT Championship, the 2023 PrairieFire Law Enforcement RANK Championship, and numerous other individual and team competitions - all planned to be hosted at PrairieFire Nevada.

Our dream is to establish PrairieFire Nevada as that hallowed destination for shooters and the home of the 2A's equivalent to the annual Super Bowl.

### Physical Assets

In addition to the Plan funding PrairieFire is making, it intends to invest tens of millions of dollars into PrairieFire Nevada. PrairieFire's investment will encompass the development of shooting courses, Helo shooting and long-range rifle assets. In addition, it has significant plans for the buildout of a substantial clubhouse for our members, commensurate with our dream of making PrairieFire Nevada the world's ultimate destination for the 2A community.

### Stagecoach Depot

PrairieFire plans to allocate a significant portion of the undeveloped Front Sight acreage for us to attempt the buildout of an RV/Mobile Home residential and visiting community, offering visitors a place to stay while enjoying PrairieFire Nevada, and even live there on a long-term basis.

## Transition from Front Sight to PrairieFire

Front Sight's emergence from Chapter 11 is the first step in becoming PrairieFire. Front Sight amassed many great achievements, including the development of superb ranges and bringing together numerous shooting enthusiasts.

We believe PrairieFire's championships, competitions, experiences and the establishment of our own NASCAR type events will be transformative in the 2A industry. PrairieFire's belief in its vision will resonate with most who love shooting, the 2A community and fun around shooting-based activities. Most importantly, our greatest success will come from creating pride among the PrairieFire membership.

## New Terms for Members

Bankruptcy is an incredibly complex and confusing process. Accordingly, PrairieFire's primary objective is to provide each Front Sight member a long look at what PrairieFire is executing. Prairie is a team of operators and they know dreams are meaningless until they are backed by action. PrairieFire wants members who are inspired by its vision for creating something unique and special that does not currently exist in the 2A community.

**On the next page is a high-level summary of new membership terms for current Front Sight members.**

## *First,* A Free Look at PraireFire

**Every current Front Sight Member will become a PrairieFire Frontier Member for two years at no cost.** This membership will allow you to continue many of the activities you enjoy today at Front Sight. This membership includes access to unlimited shooting on two dedicated ranges with basic instruction.

**This membership will give every current Front Sight member a chance to evaluate PrairieFire and decide whether you want to be part of what PrairieFire is building - without incurring any costs.**

Long-term, the PrairieFire Frontier Membership will only cost a one-time initiation fee of $200 and a $200 annual membership fee. If you convert to a paying PrairieFire Frontier membership prior to the expiration of your free two-year membership, we will waive your Initiation Fee.

In addition, PrairieFire will provide each current Front Sight member with one free day of Q Academy training for themselves and a guest.

## *Next,* PrairieFire's Four Membership Offerings

Individuals are motivated to participate in experiential destinations for a variety of reasons. In general, we believe PrairieFire members will fit broadly into one of four groups. Accordingly, we have designed our membership offerings to suit four general desires. These desires range from "just the basics" with lowest possible price to "fully engaged" in the bigger mission of what PrairieFire is attempting to accomplish.

### PrairieFire Frontier Member

PrairieFire's basic offering designed for range reps and basic instructions. The Frontier membership is priced with a one-time initiation fee of $200 and annual membership fees of $200.

Current Front Sight members will each receive a free two-year Frontier membership. In addition, current Front Sight members who convert to a paying Frontier membership prior to the expiration of the two free years will have the one-time initiation fee waived.

### PrairieFire Nevada Member

Full access to all ranges, courses, experiences, helo, sniper, and, when subject to availability, invitation to our events, championship and other activities.

The Nevada membership is priced with a one-time initiation fee of $1,000 and annual membership fees of $1,000. Nevada members will also have unlimited access to Frontier ranges designed for range reps and basic instruction. The Nevada membership will also include Q Academy training from elite operators at the cost of $500/day and shooting courses and experiences at $250/day.

Current Front Sight members who convert to a Nevada membership in 2023 will have the one-time initiation fee waived. These members converting in 2023 will also receive a 50% discount on annual membership fees and daily fees in 2023 and 2024.

### PrairieFire National Member

This membership encompasses all of the benefits of the PrairieFire Nevada membership and adds a few key benefits. In addition to PrairieFire Nevada rights, a National member will also receive those same rights at PrairieFire Texas experiential destination - which will be similar to our Nevada build-out. In addition, we are building a network of "facility partners" throughout the country. National members will receive access to these facilities, generally at a 20% discount. Finally these members will receive priority bookings and invitations to events.

The National membership is priced with a one-time initiation fee of $5,000 and annual membership fees of $2,000. National members will receive access to the facilities at the same daily fees as Nevada members.

Current Front Sight members who convert to a National membership in 2023 will have the one-time initiation fee waived. These members converting in 2023 will also receive a 50% discount on annual membership fees and daily fees in 2023 and 2024.

## PrairieFire Founder's Club Member

The Founder's Club is PrairieFire's highest level membership. It is designed for those who want to be deeply involved with our mission, our competitions and events, and become part of PrairieFire's DNA. Founder's Club members will have unique assets available to them, including "never full" access, priority invitations to all of our events and membership in our Leadership Council, led by military and law enforcement dignitaries.

Long term, the Founder's Club will be by invitation only, but PrairieFire will initially invite any current Front Sight member who has spent at least $15,000 at Front Sight on memberships and membership upgrades. **PrairieFire will have only 500 Founder's Club members, so this membership allocation will be on a first-come, first-serve basis.**

PrairieFire will reach out to Front Sight members to deliver these invitation offers directly. We also encourage any member who believes the bankruptcy documents are incorrect and would like to be a part of the Founder's Club, to contact us directly.

Current Front Sight members who convert to a Founder's Club membership in 2023 will have the one-time initiation fee waived. These members converting in 2023 will also receive a 50% discount on annual membership fees and daily fees in 2023 and 2024.

The Founder's Club membership is priced with a one-time initiation fee of $10,000 and annual membership fees of $5,000. National members will receive access to the facilities at the same daily fees as National members.

## Other Major Benefits

After confirmation of Front Sight's Plan (expected to be at the end of November 2022), PrairieFire will offer members low-cost access to key goods. Accordingly, It will implement a "cost plus" program for ammo and guns that varies based on the level of membership (ranging from "cost +10%" to "cost +15%"). PrairieFire plans to leverage sister companies to help lower costs and guarantee supply for members. These sister companies include an ammunition manufacturer and a high-end firearms manufacturer.

With respect to the Pro Shop, members will receive a discount on all other items depending on their membership level (ranging from 10% to 20% discount).

Finally, PrairieFire plans to invest in the buildout of major assets at the current Front Sight property, including an attractive clubhouse with firearm storage facilities where members can keep their guns.

PrairieFire will also provide gunsmithing, restaurant facilities, and many more amenities. As mentioned previously, it hopes to be able to execute on a residential community for short-term, long-term, and even permanent residency. The residential facility is not part of this immediate restructuring of Front Sight as we have much diligence and collaboration with local officials ahead for various approvals and execution. However, it is an important part of PrairieFire's long-term vision. It plans to build similar assets in Texas.

## PrairieFire | Frontier – *Initial* Two-year Membership

| | |
|---|---|
| **Description** | All current Front Sight members will receive a free Frontier membership during 2023 and 2024 |
| **Fees** | Free for two years |
| **Member Profile** | For those who love to shoot and want to be part of something special, this is the chance to try out PrairieFire! |
| **Direct Benefits** | Unlimited use of two Frontier ranges |
| **Discounts** | 10% Pro Shop discount, Cost + 15% for guns and guaranteed ammo program |
| **Not Included** | Q Academy training and Intense Shooting |

## PrairieFire | Frontier – *Beyond* the Free First Two Years

| | |
|---|---|
| **Description** | Frontier membership provides access to the PraireFire community and two ranges with basic instruction |
| **Fees** | One-Time $200 Initiation Fee + $200 Annual Membership Fee<br><br>Current Front Sight members who convert to a paying Frontier membership prior to the expiration of the two-free years will have the one-time initiation fee waived |
| **Member Profile** | For those who love to shoot and want to be part of something special, this is the chance to become a member |
| **Direct Benefits** | Unlimited use of two Frontier ranges |
| **Discounts** | 10% Pro Shop discount, Cost+15% for guns and guaranteed ammo program |
| **Not Included** | Q Academy training and Intense Shooting |

| PrairieFire \| Nevada | |
|---|---|
| **Description** | Access to the World's Best Shooting Experience |
| **Fees** | One-Time $1,000 Initiation Fee + $1,000 Annual Membership Fee<br><br>Current Front Sight members who convert to a Nevada membership in 2023 will have the one-time initiation fee waived. These members converting in 2023 will also receive a 50% discount on annual membership fees and daily fees in 2023 and 2024. |
| **Member Profile** | For dedicated shooters who want access to a one-of-a-kind experience |
| **Direct Benefits** | Full access to all PrairieFire Nevada ranges, courses & experiences, including sniper ranges and helicopter shooting. Invitations to Monster Mash tournaments. General admission to PrairieFire competitions. |
| **Discounts** | 10% Pro Shop discount, Cost + 15% for guns and guaranteed ammo program |
| **Not Included** | Access to PrairieFire's Texas location, guest privileges, priority booking and concierge services |

| PrairieFire \| National | |
|---|---|
| **Description** | Access to the World's Best Shooting Experiences (Nevada & Texas) |
| **Fees** | One-Time $5,000 Initiation Fee + $2,000 Annual Membership Fee<br><br>Current Front Sight members who convert to a National membership in 2023 will have the one-time initiation fee waived. These members converting in 2023 will also receive a 50% discount on annual membership fees and daily fees in 2023 and 2024. |
| **Member Profile** | For dedicated shooters who want access to a one-of-a-kind experiences at both PrairieFire locations and access to Leadership Council events with military and law enforcement dignitaries |
| **Direct Benefits** | Full access to all PrairieFire Nevada ranges, courses & experiences, including sniper ranges and helicopter shooting. Invitations to Monster Mash tournaments. |
| **Discounts** | 20% Pro Shop discount, Cost + 10% for guns and guaranteed ammo program |

## PrairieFire | Founder's Club

| | |
|---|---|
| **Description** | Invitation-only club with premier access to everything PrairieFire has to offer. Membership is limited to 500 members. |
| **Fees** | One-time $10,000 Initiation Fee + $5,000 Annual Membership Fee<br><br>Current Front Sight members who convert to a Founder's Club membership in 2023 will have the one-time initiation fee waived. These members converting in 2023 will also receive a 50% discount on annual membership fees and daily fees in 2023 and 2024. |
| **Member Profile** | Current Front Sight members with more than $15,000 in lifetime spending on membership and membership upgrades at Front Sight will receive an invitation to join the PrairieFire Founder's Club on a first-come, first-serve basis.<br><br>This group of 500 members will have unmatched access to everything PrairieFire has to offer. |
| **Direct Benefits** | Exclusive access to all PrairieFire ranges, courses & experiences, including sniper ranges and helicopter shooting. Range is never sold out for Founder's Club members<br><br>Membership in Leadership Council with Military & Law Enforcement Dignitaries, and Priority access to Leadership Council Military & Law Enforcement Dignitary Speaker Series, private dinners and events<br><br>Priority invitations to tournaments and championship events.<br><br>Access to the private Founder's Club areas (locker room with dedicated lockers, private cigar lounge & storage chamber) and complimentary services, including airport pickup/dropoff, gun shipment, storage programs and gunsmithing.<br><br>Qualification "Bye" for Select PrairieFire Competitions & Tournaments |
| **Discounts** | 20% Pro Shop discount, Cost + 10% for guns and ammo |
| **Not Included** | Founder's Club is PraireFire's only all-inclusive membership |

# Member Benefits

| Member Benefits | Founder's Club | National | Nevada | Frontier |
|---|---|---|---|---|
| **Initiation Fees** | | | | |
| Initiation Fee | $10,000 | $5,000 | $1,000 | $200 |
| Initiation Fee - Waived for Existing Members per Terms Below* | Waived for Existing Front Sight Members* | | | |
| **Annual Fees** | | | | |
| Annual Membership Fee | $5,000 | $2,000 | $1,000 | $200 |
| Annual Membership Fee - 50% Discount for Existing Members** | 50% Discount for Existing Front Sight Members** | | | $200 |
| **Daily Fees** | | | | |
| Q Academy Training Curriculum Daily Fees | $500 | | | *N/A* |
| Q Academy Curriculum Daily Fees** 50% Discount for Legacy Members in 2023 and 2024 | 50% Discount | | | *N/A* |
| Intense Shooting Experience Daily Fees* | $250 | | | *N/A* |
| Intense Shooting Experience Daily Fees** 50% Discount for Legacy Members | 50% Discount | | | *N/A* |
| Free Training days*** Legacy Members Receive One Free Day for Self and Guest | 1 + Guest | | | |
| **Discounts and Programs** | | | | |
| Pro Shop Discount | 20% Discount | | 10% Discount | |
| Access to Guaranteed Home Ammo Program | Cost + 10% | | Cost + 15% | |
| Gun Sale Program | Cost + 10% | | Cost + 15% | |
| **Membership Privileges** | | | | |
| **Range, Online and Course Access** | | | | |
| PrairieFire Online Community Membership | ✔ | ✔ | ✔ | ✔ |
| Unlimited Access to PrairieFire Nevada Ranges 6 & 7 | ✔ | ✔ | ✔ | ✔ |
| Q Academy Training Courses | ✔ | ✔ | ✔ | |
| Full Access to all PrairieFire Nevada Ranges, Courses & Experiences | ✔ | ✔ | ✔ | |
| Monster Mash Tournament Invites | ✔ | ✔ | ✔ | |
| Access to Helo Shooting Experiences | ✔ | ✔ | ✔ | |
| Access to Sniper Ranges | ✔ | ✔ | ✔ | |
| Full Access to all PrairieFire Texas Ranges, Courses & Experiences | ✔ | ✔ | | |
| Guest Privileges | ✔ | ✔ | | |
| Priority Access & Dedicated Booking Concierge | ✔ | ✔ | | |
| Range is Never Sold Out for Founder's Club Members | ✔ | | | |
| Reciprocal Rights/Discounts at Partner Ranges | ✔ | | | |

# Member Benefits

| Member Benefits | Founder's Club | National | Nevada | Frontier |
|---|---|---|---|---|
| **Membership Privileges** | | | | |
| *VIP Services* | | | | |
| "Ship Your Shot" Gun Delivery Program | ✓ | ✓ | ✓ | ✓ |
| Airport/Hotel Pickup and Dropoff | ✓ | | | |
| Complimentary Gunsmithing | ✓ | | | |
| 1-on-1 (Or Your Private Group) Training with Special Ops Instructor | ✓ | | | |
| *Special Access/Recognition* | | | | |
| Membership in Leadership Council with Military & Law Enforcement Dignitaries | ✓ | | | |
| Access to Leadership Council Military & Law Enforcement Dignitary Speaker Series/Private Dinners/Events | Priority Invitations | Secondary Priority | | |
| Championship Events - Invitation Type | | | | |
| $1 Million 2023 PrairieFire Rank Championship | Priority Invitations | Secondary Priority | General Admission | General Admission |
| $1 Million 2023 PrairieFire SWAT/LE Championship, 2023 Celebrating Heroes | Priority Invitations | Secondary Priority | General Admission | General Admission |
| 2023 Gunmaker Pre-SHOT Showcase Range Day (includes Staccato & other top tier manufacturers) | Priority Invitations | Secondary Priority | General Admission | General Admission |
| Access to Day Lockers | | ✓ | ✓ | ✓ |
| Private Founder's Club (Locker Room with Dedicated Lockers, Private Cigar Lounge & Storage Chamber) | ✓ | | | |
| Gunsmithing | ✓ | ✓ | ✓ | ✓ |
| Gun Storage | ✓ | ✓ | ✓ | ✓ |
| Shooting Experience Achievement Wall for Top Performers | ✓ | ✓ | ✓ | ✓ |
| Membership Identification Apparel, Coin and Certificate | ✓ | ✓ | ✓ | ✓ |
| Qualification "Bye" for Select PrairieFire Competitions & Tournaments | ✓ | ✓ | | |

\*    With conversion during 2023 to paid Founder's Club, National, and Nevada memberships. With conversion by end of 2024 to paid Frontier membership

\*\*   With conversion to paid membership before expiration of the free term, discount period will cover 2023 & 2024 for Founder's Club, National, and Nevada memberships

\*\*\*  One visit for a member and guest (valid during 2023 or 2024)