GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6665
E-mail: ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112

*Attorneys for Ignatius Piazza,*
*VNV Dynasty Trust I, and VNV Dynasty Trust II*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 22-11824-ABL |
| FRONT SIGHT MANAGEMENT LLC, | Chapter 11 |
| Debtor. | Date: November 18, 2022<br>Time: 9:30 a.m. |

**OBJECITON TO CLAIM OF LAS VEGAS DEVELOPMENT FUND, LLC AND JOINDER IN DEBTOR'S OBJECTION TO CLAIM OF LAS VEGAS DEVELOPMENT FUND, LLC**

Dr. Ignatius Piazza, VNV Dynasty Trust I, and VNV Dynasty Trust II (collectively, the "Piazzas"), by and through their counsel, the law firm of Garman Turner Gordon LLP, hereby file this *Objection to Claim of Las Vegas Development Fund, LLC* (the "Piazzas Objection") which objects to claim no. 284 (the "LVDF Claim") filed by Las Vegas Development Fund, LLC ("LVDF"). The Piazzas further join the *Objection to Claim of Las Vegas Development Fund, LLC* [ECF No. 393] (the "Objection")[1] filed by Front Sight Management, LLC (the "Debtor") and incorporates the arguments in that Objection as though fully restated herein. The Piazzas assert additional grounds for objection to the LVDF Claim as set forth below.

. . .

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Objection.

# I. INTRODUCTION

LVDF represented that it could loan $75,000,000 to the Debtor. The Debtor relied on LVDF's representations, advanced funds required under the loan documents, and set in motion its plans for future development of its property. However, LVDF's representations were false and, ultimately, LVDF could not raise even 10% of the loan amount it promised. LVDF's failures caused significant financial damage to the Debtor and resulted in this Chapter 11 Case. Specifically, knowing it could no longer meet its obligations, LVDF went on the offensive, seeking to try to default the Debtor and foreclose on the Debtor's real property resulting in four years of state court litigation, all in a misguided attempt to distract blame from its own wrongdoing. The Debtor properly objected to LVDF's claim in this Chapter 11 Case as it, among other things, shockingly and unjustifiably seeks to recover more than $11,000,000 on account of a $6,375,000 principal loan balance. The Piazzas join in the Debtor's Objection and request that the Court disallow the LVDF claim as set forth in the Objection.

Moreover, on its $6,375,000 principal loan balance, LVDF seeks to collect $1,126,573.55 in late fees, $1,941,822.93 in attorney fees, $159,155.55 in foreclosure costs, and approximately $865,000 for default interest. In doing so, LVDF has inflated its claim by over $4,000,000 for unreasonable and redundant costs that cannot be permitted pursuant to Section 506(b). Thus, even if this Court finds that any portion of the LVDF Claim should be allowed at all (which it should not based on the arguments raised in the Objection), the Court must strike down the excess and unreasonable amounts over principal, which nearly double the amount due. Any other outcome would permit LVDF a windfall by allowing duplicative recovery with no consideration of the actual harm to LVDF and for amounts that serve no purpose other than to penalize the Debtor.

# II. LEGAL ARGUMENT AND ANALYSIS

A.  **Joinder in the Debtor's Legal Argument and Analysis.**

As set forth in the Objection, the LVDF Claim should be disallowed for the following reasons: (1) LVDF's fraud in the inducement; (2) LVDF's material breach of contract; (3) LVDF's illusory contract is not enforceable; (4) LVDF's breach of the obligation of good faith and fair dealing; (5) LVDF's failure to produce required documentation; (6) LVDF's excessive and unreasonable

attorneys' fees; (7) LVDF's inappropriate interest charges; and (8) Debtor's offset for damages and charges. The Piazzas hereby incorporate and adopt all of the arguments set forth in the Objection as if fully set forth herein.

**B.      LVDF Is Not Entitled to Unreasonable and Duplicative Fees.**

In addition to the bases for disallowance set forth in the Objection, to the extent attorney's fees, late fees, and default interest can be charged at all (they cannot as set forth in the Objection), the amounts sought are improper as LVDF has failed to show they are reasonable or compensate LVDF for actual loss.  Instead, they serve only to provide a windfall to LVDF and improperly penalize the Debtor.

A secured creditor is limited under 11 U.S.C. § 506(b) to recovering "reasonable" fees provided for in the agreement. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989). Specifically, Section 506(b) provides:

> [t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any *reasonable* fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b) (emphasis added). "Reasonable" charges under § 506(b) are only charges that compensate the Lender for actual harm; in other words, the actual damages suffered by the Lender. *In re Imperial Coronado Partners, Ltd.,* 96 B.R. 997, 1000-01 (BAP 9th Cir. 1989)*; see also In re Outdoor Sports*, 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993)

**1. LVDF Is Note Entitled to Its Unreasonable Attorney's Fees.**

The party seeking the Court's approval of its fees bears the burden of proving that such fees are reasonable under Section 506(b).  *See In re Dalessio*, 74 B.R. 721, 724 (BAP 9th Cir. 1987) (citing *In re Meade Land & Dev. Co., Inc.,* 577 F.2d 858, 860 (3d Cir. 1978)).  To be entitled to attorneys' fees as an addition to its over-secured claim, a creditor must show: (1) that it has an allowed secured claim; (2) that it is over-secured; (3) that the attorneys' fees are reasonable; and (4) that such fees are provided for under agreement under which the claim arose.  *See Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.),* 151 B.R. 931, 935 (BAP 9th Cir. 1993).

Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

It is uniform among the courts that they have broad, inherent power to determine the reasonableness of fees under Section 506(b). *See In re 268 Ltd.*, 789 F.2d 674, 676 (9th Cir. 1986); *In re Dalessio*, 74 B.R. at 724 (citing *In re Fitzsimmons*, 51 B.R. 600 (B.A.P. 9th Cir. 1985)). In determining reasonableness, "[t]he bankruptcy court should inquire whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property." *In re Dalessio*, 74 B.R. at 723-24 (citing *In re Carey*, 8 B.R. 1000, 1004 (Bankr. S.D. Cal. 1981)); *see also In re Wilson*, 378 B.R. at 884 ("In determining whether fees are reasonable under § 506(b) the court must consider not only the agreement, but also the overall fairness and reasonableness of the fee under all of the circumstances."). Courts can employ the same reasonableness standard under a Section 506(b) analysis that would be employed under a Section 330 analysis. *See In re Parreira*, 464 B.R. 410, 415 (Bankr. E.D. Cal. 2012) (holding that the court may apply to its Section 506(b) reasonableness analysis the same principles and case law that govern the award of fees under Section 330).

"A court should not reward a creditor whose overly aggressive attorney harasses and opposes the debtor at every stage of the bankruptcy proceeding, nor should an over-secured creditor be given a blank check to incur fees and costs which will automatically be reimbursed out of its collateral." *See In re Dalessio*, 74 B.R. at 723. "Where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 279 n. 350 (Bankr. S.D.N.Y. 2007) (quoting *In re Wonder Corp. of Am.*, 72 B.R. 580, 591 (Bankr. D. Conn. 1987)).

LVDF declared a default where none existed and has been over-secured since before the beginning of this Chapter 11 Case based on its own appraisals. Pre-Petition Date, LVDF attempted to wrongfully foreclose in order to distract and deflect from its own breaches of the CLA. Post-Petition Date, LVDF has disregarded the fact that its interest in the Debtor's property is fully protected, and that Debtor's proposed Plan seeks to pay LVDF's allowed claim in full. LVDF, nonetheless, has proceeded to incur unnecessary attorneys' fees vis-à-vis its unnecessary litigation, motion practice, and discovery demands. To be sure, despite the LVDF will be paid in full on its

allowed claim, LVDF has sought extensive discovery in connection in an attempt to try to defeat the Plan.

To date, LVDF has adduced no evidence to substantiate the validity or reasonableness of its asserted attorney's fees of $1,941,822.93, which it contends its continues to accrue. Without detailed time entries, a break-down of the number of hours billed by each attorney and his/her applicable hourly rate, and a declaration providing that LVDF has, in fact, paid the asserted fees (without discount) and additional evidence supporting the reasonableness of such fees, LVDF has failed to meet its burden and the attorney's fees must be excluded from LVDF's allowed claim.[2]

**2. LVDF is Not Entitled to Unreasonable Late Fees.**

While late fees provided for in the underlying agreement may be allowed, they must be reasonable so as to comply with section 506(b) of the Bankruptcy Code. *In re Dalessio*, 74 B.R. at 724. Late charges are unreasonable liquidated damages if they are "disproportionate to the actual damages sustained by the injured party." *In re Bryant*, 39 B.R. 313, 323 (Bankr. D. Nev. 1984) (quoting *Haromy v. Sawyer*, 654 P.2d 1022, 1023 (Nev.1982)). Further, an unreasonable assessment of liquidated damages is void as a penalty. *In re Bryant*, 39 B.R. at 323.

In *In re Bryant,* the court found that late charges in the amount of $5.00 per day were void penalties because they were disproportionate to the actual damages because little to no actual damages were suffered. Specifically, the court wrote that:

> [l]ittle persuasion is necessary here. [Lender] turned over collection of the debt to counsel very early in the matter. And as reasonable attorney's fees incurred in collection are recoverable, the actual costs of collection will be compensated. Apart from minor administrative or accounting costs the Court cannot see what other collection costs [lender] has incurred. Instead of approximating the actual damages arising from collection, the Court can only conclude the late charges assessed herein are but a windfall to [Trustee]. The thousands of dollars claimed are plainly disproportionate to the actual damages sustained and, accordingly, are disallowed as penalties.

*Id*. at 323-24.

Here, LVDF seeks recovery of $1,126,573 in late fees, but has not, and cannot, articulate

---

[2] To the extent that LVDF amends its proof of claim to contain evidence regarding its fees, the Piazzas reserve their right to supplement this Joinder, if appropriate.

what collection costs it is incurring (other than perhaps attorney's fees which it is separately seeking) that would necessitate in excess of $1,125,000, or nearly 20% of the total principal balance, in late fees. Therefore, the late fees should not be allowed.

### 3. LVDF Is Not Entitled to Default Interest.

Default interest may only be awarded if enforceable under non-bankruptcy law. *See Gen. Elec. Capital Corp. v. Future Media Prods., Inc.*, 547 F.3d 956, 961 (9th Cir. 2008); In re *Beltway One Development Group, LLC*, 547 B.R. 819, 830 (BAP 9th Cir. 2016). If, and only if, default interest is enforceable under non-bankruptcy law, the Court must then consider whether the presumptive rule allowing default interest is subject to rebuttal based on equitable considerations. *See id.* (*citing In re Laymon*, 958 F.2d 72, 75 (5th Cir. 1992) (allowing default interest depending on "the equities involved in the bankruptcy proceeding") and *In re Terry, Ltd., P'ship*, 27 F.3d 241, 243 (7th Cir.), *cert. denied*, 513 U.S. 948 (1994) (presumption in favor of contractual default rate is "subject to rebuttal based on equitable considerations.").

Under Nevada state law, default interest may be disallowed when it is a non-compensatory penalty. For the purpose of determining whether default interest constitutes a penalty, courts may analyze default interest as a form of liquidated damages. *See, e.g., In re Timberline Property Dev., Inc.*, 136 B.R. 382, 385-86 (Bankr. D.N.J. 1992) (examining a default interest rate under an analysis for liquidated damages); *Foss v. Boardwalk Partners (In re Boardwalk Partners)*, 171 B.R. 87, 92 (Bankr. D. Ariz. 1994) (noting that if a default interest provision were too high, the court could strike it down as an impermissible liquidated damages provision); *In re Skyler Ridge*, 80 B.R. 500, 511 (Bankr. C.D. Cal. 1987) ("Like a prepayment premium, a default interest rate provision may be analyzed as a kind of liquidated damages.").

After considering the allowance under state law, the analysis next turned to whether the equities dictate disallowance of interest at the contract rate. *See In re Casa Blanca Project Lenders*, 196 B.R. 140, 145 (BAP 9th Cir. 1996). "[I]t is not enough for a creditor to show that the default rate of interest is within a generally accepted range of interest rates. Rather, the creditor must provide tangible proof of loss; 'formulaic or hypothetical' statements are insufficient." *In re*

*Zamani*, 390 B.R. 680, 688 (Bankr. N.D. Cal. 2008) (*citing In re Casa Blanca Project Lenders*, 196 B.R. at 147). "If the creditor fails to satisfy this evidentiary burden, the court will only allow the basic contract rate of interest." *In re Zamani*, 390 B.R. at 688 (*citing In re Yett,* 306 B.R. at 294-95; *In re Hassen Imports*, 256 B.R. at 924; *In re Casa Blanca Project Lenders*, 196 B.R. at 146-47). As such, courts should take a "hard look" before awarding default interest. *See id.* at 148. "Ultimately, the bankruptcy court must decide whether the default rate compensates the creditor for its losses or is more in the nature of a 'disguised penalty.'" *See id.*

In *Hassen Imports*, the Ninth Circuit BAP explained that the debtor overcame the presumption of the contract default rate of Section 506 by introducing evidence that the default rate was not imposed to compensate the creditor for actual loss as a result of the default. *See In re Hassen Imports P'ship*, 256 B.R. 916, 925 (9th Cir. B.A.P. 2000). Accordingly, the BAP reversed and remanded for a determination as to whether the default rate compensated for actual loss. *See id.*

LVDF seeks to recover approximately $866,000[3] in purported default interest. However, LVDF has not shown, nor can it show, that it is permitted to collect default interest as such interest does not compensate LVDF for any loss, but instead serves only to penalize the Debtor. To be sure, LVDF is also seeking recovery of attorney's fees, late fees, and foreclosure costs. There cannot be any uncompensated harm to which the default interest would apply. Furthermore, for all the reasons set forth in the Objection, including LVDF's fraud and misrepresentation, its wrongful declaration of a default, and its wrongful foreclosure attempts, the equities weigh against permitting LVDF to recover default interest (after all, the Debtor was not even in default) and therefore, this Court should not allow a claim for default interest.

    **D.**    *At Most*, **LVDF May Recover Reasonable Late Fees or Default Interest, But Not Both.**

"The decisional law is uniform that over-secured creditors may receive payment of either

---

[3] LVDF does not break down its non-default and default interest amounts in its claim and instead, identifies a total amount of interest due of $2,063,153.98. However, based on the CLA and April 2022 Invoice received by the Debtor, the Piazzas calculate the amount being charged for default interest, which is 5% above the default rate, at approximately $866,524.26.

default interest or late charges, but not both." *In re 785 Partners LLC*, 470 B.R. 126, 137 (Bankr. S.D.N.Y. 2012)(citing *In re Vest Assocs.,* 217 B.R. 696, 701 (Bankr. S.D.N.Y. 1998); *accord In re Dixon,* 228 B.R. 166, 177 (W.D.Va.1998); *In re Market Center East Retail Property, Inc.,* 433 B.R. 335, 365 (Bankr.D.N.M.2010); *In re Cliftondale Oaks, LLC,* 357 B.R. 883, 887 (Bankr. N.D.Ga. 2006); *In re Route One West Windsor Ltd. P'ship,* 225 B.R. 76, 92 (Bankr.D.N.J.1998); *In re 1095 Commonwealth Ave. Corp.,* 204 B.R. 284, 305 (Bankr.D.Mass.1997); *In re Kalian,* 178 B.R. 308, 312 n. 9 (Bankr.D.R.I.1995)). "The reason is that the late fee and default interest are designed to compensate the lender for the same injury, and awarding both amounts to double recovery." *Id.*

As set forth in the LVDF claim, LVDF is seeking to charge $1,126,573.55 in late fees and approximately $866,000 in default interest. These amounts are in addition to $1,941,822.93 in attorney's fees and $159,155.55 in foreclosure costs. In other words, **on a $6,375,000 principal loan**, LVDF is seeking to collect more than $4,090,000 for its collection of the principal. These amounts are unreasonable, unjustified, and should not be allowed. However, even if LVDF is entitled to collect any amounts asserted in the LVDF Claim (which it is not for the reasons set forth in the Objection), LVDF certainly cannot double its principal amount through charging attorney's fees, **and** foreclosure fees, **and** late fees, **and** default interest and, *at a minimum,* some of them must be disallowed.

. . .

. . .

. . .

. . .

### III. CONCLUSION

Based on the foregoing, and for the reasons set forth in the Objection, the Piazzas respectfully request that the Piazzas Objection and Objection be sustained and the LVDF Claim be disallowed as set forth in the Objection and herein, and for such other relief as this Court deems just and necessary.

DATED this 21st day of October, 2022.

                                              GARMAN TURNER GORDON LLP

                                              By:  */s/ Teresa Pilatowicz*
                                                     GREGORY E. GARMAN, ESQ.
                                                     TERESA M. PILATOWICZ, ESQ.
                                                     7251 Amigo Street, Suite 210
                                                     Las Vegas, Nevada 89119
                                                     *Attorneys for Ignatius Piazza, VNV Dynasty Trust I, and VNV Dynasty Trust II*