Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
blindsey@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV  89101
Telephone:  702.385.5544
Facsimile: 702.442.9887

*Attorneys for Nevada PF, LLC d/b/a PrairieFire*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>FRONT SIGHT MANAGEMENT LLC,<br><br>Debtor. | Case No.: 22-11824-abl<br><br>Chapter 11 |

**STIPULATION REGARDING RELEASE OF CERTAIN LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES UNDER THE DEBTOR'S <u>SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION</u>**

Front Sight Management LLC, the chapter 11 debtor in possession and plan proponent herein (the "**Debtor**"), on the one hand, and Nevada PF, LLC d/b/a PrairieFire ("**Nevada PF**"), on the other hand, each by and through its respective undersigned counsel, hereby enter into this stipulation ("**Stipulation**") regarding the release of certain liens, claims, interests and encumbrances recorded against the Debtor's real property located at 1 Front Sight Rd, Pahrump, Nevada 89061 [APN Nos. 45-481-05 and 45-481-06] (the "**Front Sight Property**")  as follows:

**RECITALS**

A. On May 24, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, thereby commencing the above-captioned Chapter 11 case.

B.  On October 3, 2022, the Debtor filed its *Second Amended Chapter 11 Plan of Reorganization* [ECF No. 405] (as may be amended or modified, the "**Plan**"),[1] pursuant to which, subject to bankruptcy court approval, Nevada PF will obtain 100% of the New Equity Interests in the Reorganized Debtor and substantially all of the Debtor's assets in exchange for various contributions to the Debtor's estate as further detailed in the Plan.

C.  Section V.A of the Plan provides that as of the Effective Date of the Plan, the Debtor will receive a discharge of all debts or liabilities, whether contingent, unliquidated, disputed, known or known, that were incurred or arose before confirmation of the Plan and the rights afforded in the Plan and the treatment of all claims therein shall be in complete satisfaction, discharge and release of all claims against the Debtor or its assets of any nature whatsoever except as specifically provided in the Plan.

D.  Section V.C the Plan provides that, as of the Effective Date, all property of the estate shall revest in the Reorganized Debtor, except as otherwise provided in the Plan or the Confirmation Order. Paragraph 8 of the proposed confirmation order [ECF No. 525, Exhibit A] (the "**Confirmation Order**") provides that all property of the estate "shall revest in the Reorganized Debtor free and clear of all claims, liens, encumbrances or other interests, except as otherwise provided in the Plan or this Confirmation Order."

E.  In connection with preparing for the transfer of ownership provided for under the Plan, Nevada PF has become aware of certain liens, claims, encumbrances and interests that are recorded against the Front Sight Property.

F.  While the Debtor does not believe that the Recorded Interests are enforceable against it or the Front Sight Property (in that they have been previously satisfied, released, the Debtor is a party to both sides of the agreement or they are related to permits/agreements with various government agencies that will expire on their own terms without renewal by the Debtor), the Debtor has agreed to enter into this Stipulation to provide clarity and certainty to Nevada PF.

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Plan.

2

**STIPULATION**

NOW, THEREFORE, the parties hereby stipulate and agree, subject to Bankruptcy Court approval, as follows:

1. The first sentence of Paragraph 8 of the Confirmation Order shall be replaced as follows: "As set forth in Section V.C of the Plan, except as provided elsewhere in the Plan, as of the Effective Date, all property of the Estate shall revest in the Reorganized Debtor, including, but not limited to, any Litigations Claims and the LVDF Litigation, free and clear of all claims, liens, encumbrances or other interests, including the following liens, claims, interests, and encumbrances:

   a. That certain Memorandum of Use Agreement recorded on September 10, 1999, in Book 19990910 as Instrument No. 477754 of the Official Records of Nye County, Nevada;[2]

   b. That certain Off-Site Improvements Agreement recorded on June 28, 2000, in Book 20060628 as Instrument No. 02466 of the Official Records of Clark County, Nevada;[3]

   c. That certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, recorded on February 10, 2006, in Book 20060210 as Instrument No. 649038 of the Official Records, Nye County, Nevada, and that certain Notice of Loan Modification recorded on July 6, 2012, in Book 20120706 as Instrument No. 786875 of the Official Records of Nye County, Nevada;[4]

---

[2] Attached hereto as **Exhibit 1**, this Memorandum of Use Agreement ("**MUA**") provided for use of the Front Sight Property by Kirby Reed until Mr. Reed was paid in full more than a decade ago for certain money lent. Mr. Reed was paid back in full and the Debtor believes that this MUA has previously been released.

[3] Attached hereto as **Exhibit 2**, this Off-Site Improvements Agreement was entered into between Clark County and the Debtor in June 2000 when the Front Sight Property was located both in Clark County and Nye County in connection with a road that was built. The Debtor believes that this agreement is no longer in effect.

[4] These documents relate to a 2006 loan that was paid in full prior to the Debtor entering into its loan agreement with Las Vegas Development Fund LLC ("LVDF"), which was a requirement of LVDF. The Debtor believes these documents have previously been released.

      d.      That certain Commercial Real Estate Lease, recorded on October 15, 2008, in Book 20081015 as Instrument No. 717276 of the Official Records of Nye County, Nevada;[5]

      e.      That certain Development Agreement by and between Nye County, State of Nevada and Front Sight Management, Inc., recorded on August 3, 2009, in Book 20090803 as Instrument No. 731349 of the Official Records of Nye County, Nevada;[6]

      f.      That certain Declaration of Conditions, Restrictions and Bylaws for Front Sight Resort and Vacation Club, recorded on October 13, 2016, in Book 20161013 as Instrument No. 860866 of the Official Records of Nye County, Nevada.[7]

**IT IS SO STIPULATED.**

Dated November 18, 2022.

[*No Further Text.  Signature Page Follows.*]

---

[5] This lease was entered into between the Debtor as lessor and Front Sight Management II Incorporated, a non-operating subsidiary of the Debtor. This lease has not been in effect for a while and the Debtor consents to its termination/removal.

[6] This Development Agreement is between the Debtor and Nye County with respect to the Debtor's planned development (which was never completed). This agreement expires in 2024 but the Debtor consents to its termination/removal.

[7] This is an agreement between the Debtor and the Nevada Department of Real Estate with respect to the aforementioned planned development. It expires November 2022 and the Debtor has not renewed it but consents to its termination/removal.

4

SCHWARTZ LAW, PLLC

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Bryan A. Lindsey, Esq.
601 East Bridger Avenue
Las Vegas, NV 89101
*Attorneys for Nevada PF, LLC*

BG LAW LLP

By: /s/ Susan K. Seflin
Steven T. Gubner, Esq.
Susan K. Seflin, Esq.
Jessica Wellington, Esq.
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
*Attorneys for the Debtor*

5

# EXHIBIT 1

# EXHIBIT 1

477754

# MEMORANDUM OF USE AGREEMENT

Notice is given of certain lifetime rights given to R. Kirby Reed ("Reed") by Front Sight Management, Inc., a California corporation ("Front Sight"), on the other hand. The rights affect and are intended to and do run with the land described in Exhibit A and B, attached to this Agreement and incorporated by reference (the "Property").

Front Sight conveys and transfers to Reed the unlimited, FEE-Free attendance to all present and future Front Sight courses conducted on the Property for the life of R. Kirby Reed.

Front Sight conveys and transfers to Reed the full and complete use of any facility constructed on the property for his own personal training at times that do not conflict or interfere with class scheduling or other reasonable uses of the Property (such as before classes, after classes, off-weekends, vacation periods, etc.), but subject to such reasonable rules and regulations as Front Sight may from time to time establish.

FRONT SIGHT MANAGEMENT, INC

_____
Ignatius Piazza, President

THIS IS BEING RECORDED AT THE REQUEST OF UNITED TITLE AS AN ACCOMMODATION ONLY WITH NO LIABILITY.

COUNTY OF Santa Cruz

STATE OF California

On August 30, 1999, Ignatius Piazza appeared before me, a notary republic, in and for Front Sight Management, Inc known or proved to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the instrument.

_____
Notary Public in and for said County and State



KEN DOOLITTLE
Commission # 1231559
Notary Public - California
Santa Cruz County
My Comm. Expires Sep 4, 2003

Official Records Nye County Nevada
Requested By: United Title of NV
09/10/99 8 24 AM
Naome Lydon Recorder          477754
Fee. $7 00 State. $     Dep tp

# EXHIBIT 2

# EXHIBIT 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

20000628
.02466



# CLARK COUNTY
# DEPARTMENT OF PUBLIC WORKS

## OFF-SITE IMPROVEMENTS AGREEMENT



THIS AGREEMENT, made and entered into this _3rd_ day of _May_, 20_2_, by and between:

_Front Sight Management, Incorporated_

whose mailing address is:

_PO Box 9617_
_Aptos, CA 95001_

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter referred to as COUNTY, for construction of off-site improvements at the following location:

WHEREAS, DEVELOPER has submitted a plan to the COUNTY for a

_Firearms Training Facility - Commercial Development_
(type of development); and

WHEREAS, the COUNTY requires construction of certain off-site improvements as part of said development.

NOW, THEREFORE, the parties to this agreement for and in consideration of the mutual promises herein contained and for other good and valuable considerations, do hereby agreed as follows:

1. **OFF-SITE IMPROVEMENTS**

    The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,

    HTE/Permit # _97-10865_           APN _40-060-02b_

    etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

1

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

20000528
.02466

2. PLANS APPROVED BY THE DIRECTOR OF PUBLIC WORKS

No off-site improvements shall commence until:

(a) off-site improvement plans have been approved by the Director of Public Works or his authorized representative;

(b) one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c) performance security executed as required by CLARK COUNTY ordinances; and

(d) an off-site permit has been issued by the Director of Public Works, or his authorized representative.

3. NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Public Works no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Public Works of the delay not less than two hours before work is scheduled to begin:

-- Placing sewer, water, gas, power, telephone lines and fire hydrants.

-- Back-filling of sewer, water, gas, power and telephone lines.

-- Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

-- Placing Type I and Type II gravel base course.

-- Priming base course.

-- Placing street lighting and burn testing.

-- Placing street name signs and traffic control signs.

4. APPROVAL OF WORK AFTER INSPECTION

(a) Whenever the Director of Public Works or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Public Works of his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

20000628

(b) Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Public Works, although previously approved by an oversight.

(c) Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Public Works.

5. ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6. FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Public Works Department.

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances, even though the plans for the item in question may have been approved by the Director of Public Works.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

7. OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

3

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

20000628

The DEVELOPER shall maintain, protect and take care of all work until its completion and final acceptance by Clark County. Maintenance of any inhabited area of the development shall include, but not be limited to, sweeping of the streets and keeping the gutter free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Public Works for the protection of the public. Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Public Works is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Public Works may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way. If a detour is needed, the Director of Public Works shall determine to what extent it shall be maintained, which shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Public Works.

8. LIABILITY

The DEVELOPER shall indemnify and hold harmless the COUNTY, its officers, agents and employees, against and from any and all liability, loss, damage, claims, demands, costs and expenses of whatsoever nature, including court costs and attorney's fees, which result from injury to or death of any persons whomsoever, or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements.

9. PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Public Works with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10. WARRANTY

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the

4

20000628
.02466

COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Public Works.

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11. REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.
If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Public Works stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

5

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

20000628
.02465

12. CERTIFICATE OF OCCUPANCY

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Public Works, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13. CERTIFICATE OF RELEASE

Upon final acceptance, by the Director of Public Works, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Public Works.

14. NO THIRD PARTY BENEFICIARY

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15. ASSIGNMENTS

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16. AGREEMENT TO BE RECORDED

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors, and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

6

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

20000628

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

STATE OF ~~NEVADA~~ California )
) SS
COUNTY OF ~~CLARK~~ Santa Cruz )

This instrument was acknowledged before me this ____ day of June 8, 20 2000, by Stephanie Weisman

_____
Stephen _____
**NOTARY PUBLIC** in and for said County and State.

DEVELOPER: Ignatius A. Piazza
Front Sight Management, Inc
PO Box 2619
Aptos, CA 95001

_[signature]_
**NOTARY STAMP:**

[Stamp: STEPHANIE WEISMAN, Commission # 1240157, Notary Public - California, Santa Cruz County, My Comm. Expires Apr 9, 2004]

**CORPORATION CERTIFICATE**

I, Ignatius A. Piazza, certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that Ignatius A. Piazza was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

_[signature]_
**SECRETARY**

COUNTY OF CLARK, a political subdivision of the State of Nevada

BY _[signature]_
CARLA J. PEARSON,
DEPARTMENT OF PUBLIC WORKS

[Stamp: REGINALD NARCISO, Notary Public - Nevada, No. 00-61434-1, My appt. exp. Feb. 3, 2004]

STATE OF NEVADA )
) SS
COUNTY OF CLARK )

Signed or attested before me on this __10__ day of __JUNE__, 20__01__ by CARLA J. PEARSON.

_[signature]_
**NOTARY PUBLIC** in and for said County and State

**RECORDER'S USE**

When recorded, return to:
Bonding
Clark County Public Works
**COMMUNITY DEVELOPMENT DIVISION**
Permit Application Center, 1st Floor
Clark County Government Center

BCC standard form approved 6-2-98

7

05/25/2000  13:48  7022542236  DataTree LLC via it's proprietary imaging BWYER ENGINEERING 03, All rights reserved.  PAGE  02

20000628
.02466

## LEGAL DESCRIPTION
## FRONT SIGHT FIREARMS FACILITY

Tract No. 38 of Survey filed with Bureau of Land Management, April 23, 1935 and also known as Tract No. 38 of the Fractional Township No. 22 South, Range No. 54 East, M.D.M. as evidenced by that certain independent re-survey and survey with tract segregation filed with the Bureau of Land Management on May 10, 1935.

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
PUBLIC WORKS CLARK COUNTY
06-28-2000 17:00  ICI
BOOK:20000628  OFFICIAL RECORDS           8
                INST:  02466
FEE:     .00    RPTT:        .00